Frederick PENNINGTON, Jr., Appellant,

v.

Vernon HOUSEWRIGHT, Director,
Arkansas Department of
Correction, Appellee.

No. 81–1177.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1981.

Decided Dec. 16, 1981.

Rehearing and Rehearing En Banc
Denied Jan. 18, 1982.

Certiorari Denied April 5, 1982.
See 102 S.Ct. 1775.

Steve Clark, Atty. Gen., Arnold M. Jochums, argued, Jack W. Dickerson, Asst. Attys. Gen., Little Rock, Ark., for appellee.

Evans Benton, Eaton & Benton, North Little Rock, Ark., for appellant.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

GIBSON, Senior Circuit Judge.

I.

This is an appeal from the dismissal by the district court,[1] without an evidentiary hearing, of a petition for a writ of habeas corpus. 28 U.S.C. § 2254 (1976). Appellant Frederick Pennington argues that he was entitled to an evidentiary hearing on the

---

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

question of whether the guilty plea he entered in state court was involuntary.

Pennington initially was charged with four counts of aggravated robbery, one count of first degree battery, and one count of capital felony murder. With the prosecutor's consent, Pennington pleaded guilty to first degree murder rather than capital felony murder, and he pleaded guilty to all other counts. He was sentenced to five concurrent life terms and one twenty-year term to run consecutively to the life terms. Pennington also executed three plea statements which provided that his guilty plea was voluntarily and knowingly made. Pennington argued in his habeas corpus petition that he entered into the plea bargain involuntarily.

Pennington alleged in his *pro se* petition that he was unable to voluntarily plead guilty because of his age (sixteen years old), the absence of his parents when he had to decide whether to accept the negotiated plea, and the prosecutor's threat to seek the death penalty if Pennington went to trial. He also alleged that his lawyer and the prosecutor told him he would only have to serve seven years.

Before accepting Pennington's guilty plea on the murder count and one of the robbery counts, the trial court asked the state whether the plea was negotiated, and the prosecutor said two life sentences had been agreed to. The court asked Pennington if the state's description conformed with his understanding, whether he understood the plea statements he had signed for all of the counts, and whether he understood he was giving up his right to a jury trial. Pennington answered "yes" to those questions. The court asked whether any threats or promises were made to induce the guilty plea (other than the negotiated plea), and Pennington answered "no." The trial court also asked Pennington whether he was in fact guilty and it asked him to describe the crimes. Pennington admitted his guilt and described the crimes.[2]

Pennington exhausted his state remedies. He did not receive a hearing on the voluntariness of his plea after the plea was entered. The issue is whether the district court could have decided Pennington's plea was involuntary without an evidentiary hearing.[3]

---

**2.** These questions were asked pursuant to Ark. R.Crim.P. 24.5, 24.6. The six counts against Pennington were based on three separate incidents. According to Pennington's description of the first incident, which was the basis for one aggravated robbery count and a first degree battery count, a cashier was shot when she refused Pennington's demand for money. Pennington's cohort engaged in a struggle with the cashier and during the struggle Pennington's gun "went off and shot her."

As to the incident for which Pennington was charged with murder and aggravated robbery, he said:

> We went riding around looking for something to rob and came up on an old lady and I jumped out of the door, closed the car, and I ran over there and I was trying to grab her pocket book from her and Danny Williams came out there and said, "Shoot the lady." I said, "No, man, knock her out." I reached for the gun and it went off and shot the old lady and we started running and got back in the car and left.

Pennington gave the following description of the third incident, which resulted in two aggravated robbery counts:

> Billy had the gun and Billy put the gun on the man. I went over there and the lady had locked the door. I told her to open the door.

> She opened the door. I got the pocket book, got the money out and I gave the pocket book back and I don't know what Billy did with the man. We ran and got in the car and Bobby drove the car off and went on home.

**3.** Pennington also raises a claim of ineffective assistance of counsel, based on the allegation that a guilty plea was ill-advised if the only evidence against Pennington was uncorroborated accomplice testimony, because such testimony cannot support a conviction. Ark.Stat. Ann. § 43–2116. However, according to Pennington's habeas corpus petition, his attorney told him the state found his fingerprints on the car of one of the victims. Designated Record at 8. The attorney's advice would not be unsound when there was such evidence. The allegation of ineffective assistance of counsel is inconsistent with the habeas corpus petition itself, and we therefore consider that claim frivolous.

There is also a suggestion that counsel was ineffective in advising Pennington he would receive only seven years if he pleaded guilty. This argument is in fact just another way of saying the guilty plea was involuntary. The question of the voluntariness of the guilty plea in light of this allegation is addressed in the text in section III.

## II.

An evidentiary hearing is not required for every habeas corpus petition, but "a federal evidentiary hearing is required unless the state-court trier of fact has after a full hearing reliably found the relevant facts." *Townsend v. Sain*, 372 U.S. 293, 312–13, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963). This does not mean, however, that the hearing must be in the form of a collateral proceeding. The Supreme Court has suggested that great weight is to be given to statements made in connection with a guilty plea: "[I]n collaterally attacking a plea of guilty a prisoner 'may not ordinarily repudiate' statements made to the sentencing judge when the plea was entered . . . ." *Blackledge v. Allison*, 431 U.S. 63, 73, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977), *quoting Fontaine v. United States*, 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973). Also, "[s]olemn declarations in open court carry a strong presumption of verity." 431 U.S. at 74, 97 S.Ct. at 1629. Equally clear is the proposition:

> [F]ederal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Id.* at 75, 97 S.Ct. at 1629–1630. Thus, "the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable." *Id.* at 74, 97 S.Ct. at 1629. The facts of a particular case determine whether an evidentiary hearing is necessary. *Richardson v. United States*, 577 F.2d 447, 450 (8th Cir. 1978), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2824, 61 L.Ed.2d 276 (1979).

The Supreme Court in *Allison* offered guidance as to the measure of finality a guilty plea should be afforded. Allison alleged in his habeas corpus petition that the terms of the plea bargain made with the North Carolina prosecutors were not followed. The district court dismissed his petition without a hearing. His guilty plea had been accepted under the following circumstances: Allison had signed a form stating he had pleaded guilty voluntarily, the sentencing judge asked Allison only questions which required a "yes" or "no" answer, the attorneys were not questioned, there was no transcript of the sentencing hearing, and there was no evidence the legitimacy of plea bargaining was mentioned.[4] Allison had alleged that he was advised by counsel to conceal the plea bargain so that the court would accept the guilty plea. 431 U.S. at 65–69, 76–77, 97 S.Ct. at 1624–1627, 1630–1631. The Supreme Court held that there should have been an evidentiary hearing because of the secrecy surrounding plea bargaining and the lack of a transcript to show an understanding of the agreement.

On the other hand, the Supreme Court observed that under reforms made by North Carolina in the plea bargaining process, a habeas corpus petitioner will be entitled to an evidentiary hearing "only in the most extraordinary circumstances." *Id.* at 80 n.19, 97 S.Ct. at 1632. Under those reforms, described by the Court, the judge advises the defendant that plea bargaining is approved and the defendant can discuss freely any promises without fear of jeopardizing the agreement. The attorneys for both sides are questioned as to whether there was a plea bargain. A transcript of the proceeding is made. *Id.* at 79, 97 S.Ct. at 1632.

The procedures followed in Pennington's case are closer to those requiring a hearing "only in the most extraordinary circumstances." A transcript of the plea hearing is in the record. The prosecutor told the court the plea was negotiated. The defendant said he understood the negotiated plea to be that which the prosecutor described.

---

**4.** The Supreme Court decision making clear that plea bargaining is legitimate, *Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971), was rendered only thirty-seven days before Allison's arraignment. *Blackledge v. Allison*, 431 U.S. at 76, 97 S.Ct. at 1630.

Thus the secrecy which surrounded Allison's plea bargain was absent in the instant case.

■ This is not to suggest that a guilty plea received under Arkansas' procedures is immune from an attack in a habeas corpus petition.[5] Even North Carolina's procedures would not do that. *Id.* at 75, 80 n. 19, 97 S.Ct. at 1632. But after a review of Pennington's allegations of involuntariness, one can see that Arkansas' procedures are sufficient to show voluntariness in Pennington's case.

### III.

We proceed to evaluate Pennington's allegations of involuntariness in light of their legal and factual bases and the statements he made at the plea hearing. Pennington alleged in his habeas corpus petition that involuntariness of his plea was based on four factors. The first three go to his ability to agree to a plea bargain of any sort, while the fourth goes to whether he had agreed to the sentence imposed. He alleged involuntariness based on his inability to reach his parents between the time he entered the plea bargain and the time he entered his plea. However, in an Arkansas court proceeding, Pennington had alleged that his attorney talked his father into making him "cop out." Respondent's Exhibit F, Brief of Appellee at 5. The district court could have concluded that Pennington's inconsistent statements and his declarations of voluntariness at the plea hearing obviated the need for a hearing on this allegation.

■ Pennington's second charge is that as a sixteen-year-old he was unable to voluntarily plead guilty. Again, the district court could have concluded that an evidentiary hearing was unnecessary based on his statements at the plea hearing and the fact that he was represented by counsel, as well as the lack of any specific allegation that suggested he could produce other evidence to show incompetency to plead guilty. A

hearing can be denied if there is no indication that material facts would be developed at a hearing. *Harris v. Tahash*, 353 F.2d 119, 122 (8th Cir. 1965).

Pennington may be arguing that no one of his age and education can voluntarily plead guilty. Such a rule would either prevent young defendants from plea bargaining or strip such pleas of any measure of finality. Either result is unwise, unfair, and without support in the law.

Pennington's third allegation is that his guilty plea was involuntary because he was simply trying to avoid the death penalty. The Supreme Court has stated that a desire for a lesser penalty does not in itself show involuntariness. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Brady v. United States*, 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970). There is not a claim that the judge or prosecutor abused his powers to induce a guilty plea. *Id.* at 751 n.8, 90 S.Ct. at 1470. Therefore, an evidentiary hearing on this issue would have served no purpose.

The last allegation of involuntariness is that Pennington was induced to plead guilty by assurances from his attorney and the prosecutor he would serve only seven years. This allegation is incredible and appears frivolous in the context of the capital offense committed and the subsequent dialogue on the plea. The allegation is undermined by Pennington's failure to indicate a source of additional evidence to support his claim. (His attorney, by affidavit, denied that anyone had suggested Pennington would serve only seven years. Designated Record at 26.) Pennington told the trial court at the plea hearing that he understood the negotiated plea to be that which the prosecutor described (a life sentence for first degree murder and a life sentence for aggravated robbery), and that there were no promises other than the negotiated plea. The hearing and the lack of any indication that evidence, other than Pennington's alle-

---

5. The voluntariness of a plea could be established more conclusively if, for example, the legitimacy of plea bargaining were expressly stated, the defendant were the first person asked to describe the terms of the plea bargain, and the defendant were informed of his eligibil-

ity for parole. *See Durant v. United States*, 410 F.2d 689 (1st Cir. 1969) (former Fed.R. Crim.P. 11 requires court to inform defendant of eligibility for parole); *but see* Fed.R.Crim.P. 11(c)(2) (Advis. Comm. Notes 1974 Amend.), making disclosure of such information optional.

gations, would be forthcoming warranted the district court's dismissal without a hearing.

## IV.

Finally, we note that the habeas corpus statute requires a district court to give a presumption of correctness to "a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction ..., evidenced by ... reliable and adequate written indicia ...." 28 U.S.C. § 2254(d) (1976). *See also Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The presumption shall not be made if "the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing." 28 U.S.C. § 2254(d)(2). The parties would have us adopt an absolute rule as to whether a plea hearing can be a full and fair hearing. Although *Allison* does not discuss this specific provision, we believe that the Court's admonition not to adopt a *per se* rule on the adequacy of a plea hearing applies to this subsection. We base this belief on the Court's reliance on § 2254, 431 U.S. at 71, 75, 97 S.Ct. at 1627, 1630, and the fact that no other subsection of § 2254 suggests the weight to be given a state court determination.

Even if the *Allison* Court was not referring to § 2254(d), that case set forth the analysis on the need for an evidentiary hearing on the voluntariness of a guilty plea. We are bound to follow the law of the case. Since *Allison* was a § 2254 case, we can assume that if subsection (d) should alter the analysis, the Court would have mentioned that fact. Therefore, we do not need a separate analysis of the adequacy of the hearing under § 2254(d). As noted in *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Here Pennington was obviously choosing to avoid harsher penalties that were possible, given the aggravated circumstances of the murder, assaults and robberies committed by him.

## V.

The inconsistencies in Pennington's statements, the lack of an indication that further evidence could be produced, and the circumstances under which his guilty plea was entered justified the district court's dismissal of his habeas corpus petition without an evidentiary hearing.

Affirmed.

BRIGHT, Circuit Judge, dissenting.

I dissent.

From my reading of the record, I do not agree that this case is an appropriate one for summary dismissal. Here, while Pennington has apparently exhausted his state remedies, he has never obtained a complete hearing in state court on claims relating to alleged coercion surrounding his guilty plea. In my judgment, petitioner's allegations justify a hearing in the federal district court. Accordingly, I would remand this case to the district court for an appropriate evidentiary hearing.