**William Lloyd HILL, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 83–1397.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1983.

Decided April 9, 1984.

---

Steve Clark, Atty. Gen., by William C. Mann, III, Asst. Atty. Gen., Little Rock, Ark., for appellee.

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

Jack T. Lassiter, Little Rock, Ark., for appellant.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

William Lloyd Hill appeals the denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254 (1977). Hill pleaded guilty to a charge of first degree murder and theft of property in the Circuit Court of Pulaski County, Arkansas, and was sentenced to thirty-five years imprisonment for the murder and a ten-year concurrent sentence for the theft. Hill claims that he entered the guilty plea with the understanding that he would have to serve only one-third of his sentence, less good time, before becoming eligible for parole. Because he is a second offender, he is not eligible for parole until he has served one-half of his term less good time. We affirm the order of the district court.[1]

The district court refused an evidentiary hearing and based its ruling on the record before it. The district court set out in some detail the questioning at the plea hearing:

THE COURT: And you want to plead guilty to this charge with this sentence in mind?

DEFENDANT HILL: Yes, sir.

THE COURT: Are you guilty?

DEFENDANT HILL: Yes, sir.

. . . .

THE COURT: All right. Is this your signature on the bottom of this plea statement?

DEFENDANT HILL: Yes, sir.

THE COURT: Has your attorney explained this statement to you?

DEFENDANT HILL: Yes, sir.

THE COURT: Do you understand it?

DEFENDANT HILL: Yes, sir.

THE COURT: Do you have any questions about it?

DEFENDANT HILL: No, sir.

THE COURT: Any threats or promises made to get you to enter the plea of guilty?

DEFENDANT HILL: No, sir.

THE COURT: Other than the negotiated plea?

DEFENDANT HILL: No, sir.

The district court concluded that Hill's parole eligibility was not of such consequence that his guilty plea was rendered involuntary and that the incorrect advice as to parole eligibility did not render counsel's performance constitutionally inadequate. The court found no constitutional violation in denying Hill's motion to withdraw his plea. The district court observed that the state trial court had been correct in informing Hill that he would have to serve at least one-third of his sentence before becoming eligible for parole, and pointed out that with maximum good time and application of the one-half rather than the one-third rule Hill could become eligible for parole in nine years. This is less than one-third of the sentence imposed and it was this sentence, rather than the time actually to be served, that was the bargain involved with respect to the plea.

Act 93, Ark.Stat.Ann. §§ 43–2828(2) and 43–2829(B)(3) (1977), mandates that a second offender serve one-half of his term less good time. Failure to be advised of this statute is the issue in this case. As the district court properly observed, whether the incorrect advice as to parole eligibility would entitle Hill to habeas relief is a question of first impression in this circuit.

Hill in his petition attached affidavits of two attorneys which discussed the importance of the possible parole date in plea negotiations. Hill contended in his petition that the advice given him by counsel was that he would be eligible for parole after serving one third of his sentence, less good time, which would be approximately six years. The attorney failed to inform him of Act 93 requiring that as a second offender he serve one-half of his term, less good time, which would be approximately nine years.

Hill's contention on this appeal is that he is entitled to an evidentiary hearing on whether his plea was voluntary in view of the incorrect advice given him by his lawyer.

I.

The details of parole eligibility are considered collateral rather than direct consequences of a plea, of which a defendant need not be informed before pleading guilty. *Cepulonis v. Ponte*, 699 F.2d 573 (1st Cir.1983); *Hunter v. Fogg*, 616 F.2d 55 (2d Cir.1980); *Trujillo v. United States*, 377 F.2d 266 (5th Cir.), *cert. denied*, 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967).

Neither the Federal[2] nor Arkansas[3] Rules of Criminal Procedure require that information about parole eligibility be explained to a defendant. We should not, by judicial opinion, require state procedures to provide state defendants with information that our rules do not require be given to federal defendants. As the Second Circuit explained in reference to Rule 11, as a matter of federal constitutional law, a higher standard should not be applied to a state judge than is applied to a federal district judge performing the same function. *Hunter, supra*, 616 F.2d at 61.

---

**2.** Fed.R.Crim.P. 11(c)(1). As explained in the notes to Rule 11 of the Federal Rules of Criminal Procedure (Advis.Comm. Notes 1974 Amend.), under the 1974 amendment to Rule 11 it is not required that the defendant be informed of parole eligibility. In *Moody v. United States*, 469 F.2d 705 (8th Cir.1972), this Court held that ineligibility for parole was a direct consequence of a guilty plea. However, that decision was prior to the 1974 amendment to Rule 11, and as this Court noted in *Pennington*

*v. Housewright*, 666 F.2d 329, 332 n. 5 (8th Cir.1981), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982), the rule no longer requires that a defendant be advised about parole eligibility. *Cf. United States v. DeGand*, 614 F.2d 176 (8th Cir.1980).

**3.** *Rightmire v. State*, 275 Ark. 24, 627 S.W.2d 10 (1982).

## II.

We believe the district court properly relied on *Hunter v. Fogg, supra.* In *Hunter* the petitioner claimed that he had been misled by the court, the prosecutor and his attorney concerning his possible minimum sentence because he had been misinformed about his parole eligibility date. The *Hunter* court reasoned that the minimum period of imprisonment is more analogous to a parole release decision than a minimum judicial sentence; therefore the constitutional requirements of a state court guilty plea include informing a defendant of a mandatory minimum sentence, but do not include informing him of his parole eligibility date. The *Hunter* court refused to vacate the petitioner's conviction, holding that "[t]he voluntariness of a guilty plea is not undermined by lack of explanation as to the mechanics of a parole system...." 616 F.2d at 62.

The Fourth Circuit in *Strader v. Garrison,* 611 F.2d 61 (4th Cir.1979), reached a contrary conclusion. In *Strader* the court held that when the misadvice of a lawyer is so gross as to amount to a denial of the constitutional right to the effective assistance of counsel, the defendant must be allowed to withdraw his plea of guilty.

This is not a case involving intentional misrepresentation. The district court was correct in informing Hill that he would have to serve at least one-third of his sentence before becoming eligible for parole. Even under the one-half rule of Act 93, with maximum good time, Hill could be eligible for parole in nine years. This is less than one-third of the actual sentence imposed. The district court properly concluded that the plea bargain is for the judicial sentence imposed, not the actual time to be served. As is evident from the transcript of the plea proceedings, Hill's parole eligibility date was not a part of the plea bargain. The agreement, by which

the state is bound and to which Hill is entitled, is simply that he will serve no longer a term than that to which the judge sentenced him.

The plea hearing also did not concern itself in any respect with allowance for good time. After the trial judge had pronounced sentence and allowed petitioner credit for the four months served, he asked, "Do you have any questions about the plea or sentence or anything having to do with this case," and Hill's answer was, "No." Hill's lawyer at the plea hearing is now deceased. There is nothing to indicate that at the time the plea was entered the good-time allowance or parole eligibility were considerations in the decision to enter a guilty plea.

Even in *Strader,* the court stated that a defendant's plea is not rendered involuntary in a constitutional sense if he is not informed of all the possible indirect and collateral consequences of his plea; and the *Strader* court recognized that ordinarily parole eligibility is such an indirect and collateral consequence that the defendant need not be specifically advised by the court or counsel before accepting a guilty plea. 611 F.2d at 63.

*Strader* involved gross misinformation. While Strader's lawyer advised him that his thirty-year concurrent sentence would have no affect on his parole eligibility date, the published regulations of the Department of Corrections were to the contrary. This meant that his parole eligibility date was extended by one-fourth of the thirty years to eight and three-fourths years instead of the anticipated one and one-fourth years. *Strader,* 611 F.2d at 63. Such gross misinformation is not a factor in this case. The nine-year parole eligibility date under even the one-half rule does not demonstrate that Hill was grossly misinformed.[4]

---

**4.** In another Fourth Circuit case which followed *Strader, supra,* gross misinformation was involved. *O'Tuel v. Osborne,* 706 F.2d 498 (4th Cir.1983). In *O'Tuel* the defendant had been told that he would be eligible for parole in ten years when in fact he would not be eligible for

parole until after he had served 20 years. 706 F.2d at 499. *Strader* and *O'Tuel* do not define "gross misinformation," but as is evident involve major miscalculations in the years. It is this miscalculation in years that is material to

Although this Court has not directly ruled on the question of whether misinformation regarding parole eligibility vitiates a guilty plea, we considered an analogous situation in *United States v. DeGand, supra,* 614 F.2d 176. In *DeGand,* the defendant contended that his attorney misled him to believe that his sentences would run concurrently. This Court stated that "the erroneous advice of counsel as to the penalty which may be imposed does not, by itself, lead to manifest injustice sufficient to allow a defendant to withdraw his guilty plea." *Id.* at 178. In a footnote we explained that this is particularly true where the penalties are collateral rather than direct consequences of the plea. *Id.* at 178 n. 4.

This case is similar to *DeGand.* Parole eligibility is not a direct consequence of a guilty plea and the alleged misinformation Hill received regarding his parole eligibility is not sufficient to render his guilty plea involuntary.

Further reasons articulated by the district court make it undesirable that claimed misadvice on parole eligibility render the plea involuntary. The petitioner's behavior and legislative and administrative changes in parole eligibility rules may affect this date. Every plea bargaining arrangement thus would be subject to reopening any time a defendant did not become eligible for parole at the time estimated. We do not believe that the constitution requires this conclusion.

### III.

Hill also contends that he is entitled to habeas relief on the ground that his counsel's erroneous advice amounted to ineffective assistance of counsel in violation of the sixth amendment. To prevail on an ineffective assistance of counsel theory, a habeas petitioner must establish: (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) that he was prejudiced by his attorney's ineffective-

ness. *Brunson v. Higgins,* 708 F.2d 1353, 1356 (8th Cir.1983). Counsel is presumed to have rendered effective assistance. *Harris v. Housewright,* 697 F.2d 202, 206 (8th Cir.1982).

In challenging the effectiveness of counsel, Hill must allege and prove a serious dereliction of duty on the part of counsel sufficient to show that his plea was not a voluntary and intelligent act. *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763 (1970); *Zaehringer v. Brewer,* 635 F.2d 734, 737 (8th Cir.1980), *cert. denied,* 454 U.S. 1100, 102 S.Ct. 675, 70 L.Ed.2d 642 (1981). Counsel is not required to perform perfectly. *Brunson, supra,* 708 F.2d at 1356. In the guilty plea context, a lawyer need not give wholly accurate advice in order to render effective assistance. *Hawkman v. Parratt,* 661 F.2d 1161, 1170 n. 18 (8th Cir. 1981).

In *Strader* the Fourth Circuit held that "when a defendant is grossly misinformed about his parole eligibility, and relies upon that misinformation, he is deprived of his constitutional right to counsel." 611 F.2d at 65. As previously stated, however, gross misinformation is not involved in this case. Counsel's advice concerning Hill's parole eligibility, even if not wholly accurate, does not amount to constitutionally inadequate performance and is not a dereliction of duty sufficient, by itself, to allow Hill to withdraw his guilty plea.

### IV.

Since it conclusively appears from the record in this case that Hill is entitled to no relief, the district court did not err in denying Hill's petition without an evidentiary hearing.

A hearing is not required where the issues can be resolved on the basis of the record. *Lindner v. Wyrick,* 644 F.2d 724 (8th Cir.), *cert. denied,* 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981). This Court has found that the Arkansas guilty

the individual in question rather than the reason for the miscalculation.

plea procedures would require a hearing only in the most extraordinary circumstances. *Pennington v. Housewright, supra,* 666 F.2d at 331. *See also Blackledge v. Allison,* 431 U.S. 63, 80 n. 19, 97 S.Ct. 1621, 1632 n. 19, 52 L.Ed.2d 136 (1977).

A transcript of the plea hearing is in the record, and from this transcript it is evident that Hill understood the plea bargain and his rights thereunder. Hill asserts, however, that if granted an evidentiary hearing he could establish that his counsel provided him with erroneous advice. In light of our conclusion that counsel's erroneous advice is not sufficient, by itself, to allow Hill to withdraw his guilty plea, even if Hill could establish the truth of his allegation, such would not mandate a different result. No hearing is required where a hearing could have no impact on the result. *Lindner, supra,* 644 F.2d at 729. Since Hill does not indicate any additional information material to his petition that could be adduced at a hearing, the district court's failure to hold an evidentiary hearing was not improper.

For all the reasons stated above, we affirm the order of the district court.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. Hill alleges his attorney told him before he agreed to plead guilty that he would be eligible for parole after serving one-third of his sentence less good time, or approximately six years. In fact, Arkansas law requires Hill, as a second offender, to serve at least one-half of his sentence less good time, or nine years. The Fourth Circuit regards as incompetent an attorney who wrongly informs a client contemplating a plea bargain that the client will spend less time incarcerated than the published law mandates. *O'Tuel v. Osborne,* 706 F.2d 498, 500 (4th Cir.1983); *Strader v. Garrison,* 611 F.2d 61, 63 (4th Cir.1979). I agree, and would remand Hill's cause to the district court for an evidentiary hearing.

A defendant who pleads guilty has no less of a right to effective assistance of counsel than the defendant who goes to trial. "When a defendant pleads guilty on the advice of counsel, the attorney has the duty to advise the defendant of the available options and possible consequences." *Beckham v. Wainwright,* 639 F.2d 262, 267 (5th Cir.1981) (citing *Brady v. United States,* 397 U.S. 742, 756, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970)). "A guilty plea must represent the informed, self-determined choice of the defendant among practicable alternatives; a guilty plea cannot be a conscious, informed choice if the accused relies upon counsel who performs ineffectively in advising him regarding the consequences of entering a guilty plea and of the feasible options." *Hawkman v. Parratt,* 661 F.2d 1161, 1170 (8th Cir.1981) (citations omitted).

What singles this case out from the myriad of habeas cases in which defendants claim their attorneys misled them into pleading guilty is the allegation that Hill's attorney misinformed him on the applicable law. In *Strader,* the defendant's lawyer assured his client that by pleading guilty and accepting a thirty-year sentence to run concurrently with a prior sentence, the defendant would not extend his prior parole eligibility date. This advice ran contrary to a published regulation of the state department of corrections which required recomputation of parole eligibility upon imposition of an additional concurrent sentence. In holding that the attorney's misinformation constituted ineffective assistance of counsel, the Court stated:

> This was not just a prediction that was not realized. The lawyer could have discovered the applicable rule had he looked in the published material, but he did not. The result was that Strader entered his guilty plea believing that his new eligibility date would be several years ·sooner than the regulations permitted.

*Strader v. Garrison, supra,* 611 F.2d at 63.

Similarly, in *O'Tuel v. Osborne, supra,* 706 F.2d at 499, the Court found an attorney ineffective when he failed to discover the applicable statute had been amended and consequently informed his client that he would be eligible for parole after ten years instead of the actual twenty.

The failure to properly instruct one's client on the consequences of published law also distinguishes Hill's case from *United States v. Degand*, 614 F.2d 176 (8th Cir. 1980), relied on by the majority. Degand claimed his counsel misled him to believe that his state and federal sentences would run concurrently. At sentencing, Degand's attorney expressed his "hope that your action, Your Honor, would make it possible that we might combine time-wise the * * * imprisonment in Illinois and the federal punishment at the hands of the Federal Government in this case." *Id.* at 178. Any advice Degand's attorney gave him was based on hope of leniency rather than a misreading of the law. This distinction is important because Degand waived any reliance on his attorney's assurances of leniency when he acknowledged at the plea hearing that sentencing was in the sole discretion of the trial judge. Nothing said at Hill's plea hearing would have alerted him to his attorney's legal error. The court did not address parole eligibility until after accepting the plea. Even then, the court reinforced the attorney's error by stating Hill would have to serve "at least one-third of his sentence."

The majority distinguishes the Fourth Circuit precedents by asserting they involved "gross misconduct" by the attorneys. The majority does not attempt to define gross misconduct or distinguish the alleged misconduct of Hill's attorney. The seriousness of the attorney's misconduct cannot be calculated by merely figuring the number of years in prison the attorney's mistake cost the defendant. In *Strader,* the Court did not state the exact number of years the overlooked regulation pushed back Strader's parole eligibility date, but noted it was "several." At any rate, we cannot measure an attorney's misconduct by the relative seriousness of the defendant's offense and the consequent length of sentence. Furthermore, the magnitude of the alleged oversight in this case is no less than in the Fourth Circuit cases. In *Strader,* the attorney did not look up the department of corrections' regulations; in *O'Tuel,* the attorney did not check the statute for amendments; here, the attorney allegedly did not consult the statute applicable to second offenders. In each case, the attorney failed to do the minimal research necessary to ascertain the applicable law. The *Strader* Court was justified in labeling this failing "gross misconduct."

I agree with the majority that the state court did not need to inform Hill of his parole eligibility date to assure the voluntariness of his plea. The collateral consequences rule should not bar an ineffective assistance of counsel claim, however, where an attorney's misadvice respecting a collateral consequence induces a defendant to plead guilty. The district court dismissed Hill's ineffective assistance of counsel claim without a hearing because it did not believe the facts alleged raised a constitutional claim. I would remand to the district court to determine whether Hill's counsel wrongly advised him on his parole eligibility prior to his plea.