**William Lloyd HILL, Appellee,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellant.**

No. 88–2237.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 9, 1989.

Decided June 14, 1989.

Rehearing Granted Aug. 11, 1989.*

* Opinion vacated, see 883 F.2d 53.

Jack Gillean, Little Rock, Ark., for appellant.

Jack T. Lassiter, Little Rock, Ark., for appellee.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

The District Court[1] granted habeas corpus relief to William Lloyd Hill, who is under a sentence of 35 years for murder and theft. A.L. Lockhart, Director of the Arkansas Department of Correction, appeals. He argues (1) that the Court should have dismissed Hill's successive habeas petition pursuant to Rule 9(b) of the Rules Governing Section 2254 Cases and *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), and (2) that the Court erred in ruling that Hill's guilty plea was involuntary, and therefore invalid, as a result of constitutionally inadequate advice by counsel regarding parole eligibility, entitling Hill to a trial. We affirm. In hearing Hill's second petition, the District Court did not abuse its discretion, because there had been no final determination on the merits of Hill's first petition. And the erroneous parole eligibility advice given to Mr. Hill was ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), rendering Hill's plea invalid.

## I.

Hill was charged with first-degree murder and theft of property occurring on October 1, 1978. He pleaded guilty in the Circuit Court of Pulaski County, Arkansas, on April 6, 1979, explaining to the Court that he and Darrel Pitts had been to a bar, and Pitts had "hit me in the teeth with a gun. He also stabbed another person the same night and I just felt threatened by him." J.A. 53. Hill said he shot Pitts and fled the state with Pitts's car and gun. The Court accepted Hill's plea and sentenced him to concurrent sentences of 35 years for the murder and 10 years for the theft.

Prior to his plea hearing, Hill had asked his appointed counsel about his potential sentence and parole eligibility under Arkansas law. Tr. 23. His attorney told him that he faced a sentence of five to fifty years or life, and that he would be eligible for parole after serving one-third of his sentence, with time off for good behavior.[2] In fact, Ark.Stat.Ann. §§ 43–2828, 43–2829 (1977),[3] known as "Act 93," required individuals with prior convictions to complete not one-third but one-half of their sentences, with time off for good behavior. Mr. Hill, who had been convicted of burglary in Florida in 1978, apprised his counsel of that prior conviction at the outset of their first meeting (Tr. 21, 29), but his counsel never mentioned Act 93 or its effect on Hill's parole eligibility.

During plea negotiations, Hill rejected a proposal by the prosecution for a 45–year prison term in exchange for a guilty plea

---

1. The Hon. Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. Ark. Stat. Ann. § 46–120 (Repl.1977) provided that an inmate's good behavior can produce a sentence reduction of thirty days for every thirty days actually served.

3. These statutes have been recodified as A.C.A. §§ 16–93–602, 603, and 604 (1987).

because his lawyer told him that with such a sentence he would be eligible for parole in "about nine years. And I told him that I couldn't see how that would be in my benefit to take that sentence because it was my understanding that people were getting out from life sentences [as a result of executive clemency] after only serving seven years, and he said that that was true." Tr. 24–25. Hill testified that he understood commutations of life sentences to be fairly commonplace, though not guaranteed. Tr. 30–32.[4] Using seven years as his benchmark, Hill then accepted the prosecution's subsequent offer of a 35–year sentence in exchange for his plea of guilty, since his counsel had told him that his parole eligibility would then be six years (Tr. 26, 29), and had advised him to accept that offer. Presumably, counsel calculated as follows: one-third of a 35–year term is approximately twelve years, and with optimal behavior, Hill could be out in six years. However, as a second offender, Hill actually must serve one-half of the 35–year term (approximately eighteen years), so that with the maximum time off for good behavior, his earliest parole eligibility is slightly less than nine years, the very term he had rejected when he turned down the 45–year bargain first offered him.

The judge at the plea hearing reinforced Hill's misconception by stating, "[i]t is agreed under the negotiated plea. You will be required to serve at least one-third of your time before you are eligible for parole." J.A. 55. The judge never asked Hill if he had any prior convictions.[5]

As soon as Hill received notice that he would have to serve a minimum of nine years, rather than the six he had been told, he contacted the prison records office to check on what he thought must be a mis-

take. When that office informed him that he was subject to Act 93, Hill tried to get in touch with his lawyer, who never responded to his inquiry. Hill then attempted to do his own research on Act 93, and filed an unsuccessful Rule 37 petition for post-conviction relief in state court. Next, he filed a *pro se* habeas corpus petition in federal district court. On February 28, 1983, that petition, too, was denied, along with Hill's request for an evidentiary hearing. The District Court decided that the alleged error regarding Hill's parole-eligibility date was not of such consequence as to render Hill's plea involuntary or his counsel's performance constitutionally inadequate. *Hill v. Lockhart*, No. PB–C–81–217 (E.D.Ark. 1983).

Hill appealed that denial to this Court, which affirmed on April 9, 1984, by a divided vote. *Hill v. Lockhart*, 731 F.2d 568 (8th Cir.1984). The majority agreed with the District Court that the alleged misadvice given to Hill did not rise to the level of a deprivation of the constitutional right to counsel. It reasoned that Hill had been told by the state trial judge that he would have to serve at least one-third of his sentence (approximately twelve years) before becoming parole eligible. Since Hill would actually be eligible in nine years, he was no worse off than the judge had suggested.[6] The Court characterized Hill's challenge as involving "details of parole eligibility [which] are considered collateral rather than direct consequences of a plea," and noted that "a defendant need not be informed [of them] before pleading guilty." *Id.* at 570. Without proof of "gross misinformation" on the order of that found in *Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979) (where counsel misrepresented

---

**4.** At the time, this was a correct perception, or at least one widely shared by the bar. Commutations of life sentences have become less frequent in recent years.

**5.** The judge may have assumed from the plea statement which Hill signed that he had no criminal record. But that statement, which reads, "You are charged with a felony and with 0 prior convictions" (J.A. 57), indicates only that no former offenses were part of Hill's present charge, as could have occurred using the Habit-

ual Offender Act. See Dist. Ct. Order of April 5, 1988, n. 1, J.A. 72, and uncontradicted testimony, Tr. 14–16. The Habitual Offender Act, Ark. Stat. Ann. § 41–1001 (Repl.1977), produces a longer formal sentence. Act 93, on the other hand, affects parole eligibility after the sentence, whatever it is, has been pronounced.

**6.** Of course, the fallacy in this logic is that credit for good time is factored in on the one hand but not on the other.

parole eligibility of eight and three-quarters years as one and three-quarters years), the Court would not find constitutionally ineffective assistance. *Hill, supra,* 731 F.2d at 571. The dissent argued that the error in Strader's and Hill's cases was the same—counsel's failure to look up the applicable law and advise his client of the correct eligibility date. *Id.* at 573–74 (Heaney, J., dissenting).

This Court granted Hill's petition for rehearing en banc, thereby vacating the three-judge panel's decision. The en banc Court affirmed the District Court's denial of habeas relief by an equally divided vote on September 20, 1984. *Hill v. Lockhart,* 764 F.2d 1279 (8th Cir.1984) (en banc). Hill then took his case to the United States Supreme Court, which affirmed our judgment on November 18, 1985, but did so on procedural grounds, declining to reach the merits. *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). The Court applied the test of *Strickland v. Washington, supra,* for evaluating ineffective assistance of counsel claims, to the context of guilty-plea challenges. *Hill, supra,* 474 U.S. at 58, 106 S.Ct. at 370. The Court did not determine if Hill's claim met the first part of the *Strickland* test—i.e., whether or not the representation he received "fell below an objective standard of reasonableness," *id.* at 57, 106 S.Ct. at 369 (quoting *Strickland, supra,* 466 U.S. at 688, 104 S.Ct. at 2064)—because the Court decided that Hill's pleadings failed to allege the "prejudice" required by the second part of the *Strickland* test. Hill's *pro se* habeas petition did not explicitly allege that he was prejudiced by his attorney's error, in the sense that he would have elected to go to trial had counsel accurately informed him of his parole-eligibility date under the proposed sentence. According to the Supreme Court, Hill "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." *Hill, supra,* 474 U.S. at 60, 106 S.Ct. at 371.

Following the Supreme Court's ruling based on the procedural defect in his first petition, Hill filed another habeas petition, which sought to cure that defect with a more specific allegation of prejudice. The District Court, on July 28, 1986, denied the state's motion to dismiss Hill's successive petition as an abuse of the writ under 28 U.S.C. § 2244(b) and Rule 9(b) of the Rules Governing Section 2254 Cases. J.A. 37. On May 22, 1987, a United States Magistrate[7] conducted an evidentiary hearing at which Hill and an expert witness testified about the adequacy of Hill's counsel and the prejudicial impact of his erroneous advice. The Magistrate, believing the earlier Eighth Circuit panel decision on the merits to be binding, submitted a recommendation on January 29, 1988 to deny habeas relief. J.A. 63. But the District Court, by order of April 5, 1988, returned the case to the Magistrate for additional findings, since it did not agree that the prior Court of Appeals decision was controlling. J.A. 70. The Magistrate then submitted Amended Findings of Fact and Conclusions of Law and a recommendation for habeas relief, on June 28, 1988. J.A. 75. These were adopted by the District Court on July 19, 1988, entitling Hill to be tried within ninety days or be released according to the writ. *Hill v. Lockhart,* No. PB–C–86–25 (E.D. Ark.1988). We stayed this order pending appeal.

## II.

■ The District Court did not commit an abuse of discretion by reconsidering Hill's case, this time with a full evidentiary hearing. According to Rule 9(b) of the Rules Governing Section 2254 Cases, "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits ..." This rule grew out of the standard set in *Sanders, supra,* 373 U.S. at 15, 83 S.Ct. at 1077:

> Controlling weight may be given to denial of a prior application for federal habeas corpus ... relief only if (1) the same

7. The Hon. John F. Forster, Jr., United States    Magistrate for the Eastern District of Arkansas.

ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

Both Rule 9(b) and *Sanders* concern the appropriateness of denying a successive petition; neither prohibits a judge from exercising discretion to *grant* a hearing.[8]

Moreover, while Hill's first and second petitions raise essentially the same grounds, he never got a final determination on the merits of his first petition. The initial opinion of the District Court and that of the three-judge panel do reach the merits of Hill's ineffective-assistance claim. However, we vacated the panel decision by granting Hill's petition for rehearing en banc, and the Supreme Court superseded the District Court's discussion of the merits by affirming the denial of habeas relief on a procedural ground.

The Supreme Court granted Hill certiorari to resolve the conflict between his case and *Strader, supra* (where the petitioner won habeas relief), but it decided to reserve consideration of the merits because of Hill's failure to allege facts which, if true, would entitle him to relief.

> We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of "prejudice."

*Hill, supra,* 474 U.S. at 60, 106 S.Ct. at 371. As the Supreme Court explained in similar circumstances in *Sanders, supra,* 373 U.S. at 19, 83 S.Ct. at 1079, "the denial, thus based, was not on the merits. It was merely a ruling that petitioner's pleading was deficient." And the concurrence in *Hill,* which disagreed about the sufficiency of the pleadings and went on to discuss the

merits, strongly supports the District Court's ultimate decision to grant habeas relief.

> [H]ad the petitioner's attorney known of a prior conviction and still informed petitioner that he would be eligible for parole after serving one-third of his sentence[,] petitioner would be entitled to an evidentiary hearing and an opportunity to prove that counsel's failure to advise him of the effect of Ark. Stat. Ann. § 43–2829B(3) (1977) amounted to ineffective assistance of counsel. The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis adopted by the majority, as such an omission cannot be said to fall within "the wide range of professionally competent assistance" demanded by the Sixth Amendment. *Strickland v. Washington, supra,* [466 U.S.] at 690 [104 S.Ct. at 2066].

*Hill, supra,* 474 U.S. at 62, 106 S.Ct. at 372 (White, J., concurring, joined by Stevens, J.).

■ Finally, we reject the state's appeal to the doctrines of *res judicata* and law of the case. *Res judicata* as such does not apply in habeas proceedings, and the only "law of the case"—assuming that doctrine would apply—is the Supreme Court's holding that Hill's first habeas petition was deficient as a matter of pleading.

The District Court did not abuse its discretion in entertaining this second habeas petition.

### III.

■ Turning to the merits, we affirm the District Court's determination that Hill's counsel was constitutionally ineffective and that his erroneous advice affected the outcome of the plea process, entitling Hill to withdraw his guilty plea and have his case heard at trial. To be valid, a plea must represent a voluntary and intelligent choice among the alternatives available to the defendant. *North Carolina v. Alford,* 400

---

**8.** The state argues, as well, for dismissal under 28 U.S.C. § 2244(b), which also uses discretionary language: "a subsequent application for a writ of habeas corpus ... *need not* be entertained ..." (emphasis added).

U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill, supra,* 474 U.S. at 56, 106 S.Ct. at 369 (quoting *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)).

The failure of Hill's lawyer to ascertain, through minimal research, the applicable statute governing parole eligibility for second offenders, and to inform his client accurately when asked about that eligibility, fell below the objective standard of reasonableness required by the Sixth Amendment. We agree with Hill's expert witness[9] that the "earliest potential parole eligibility date ... [is] normally one of the most important factors to a criminal client." Tr. 11. The basic minimum amount of time that a defendant will have to serve is an integral factor in plea negotiation; it is a direct, not a collateral, consequence of the sentence. While the state has no federal constitutional duty to inform a defendant about parole, see *Hill, supra,* 474 U.S. at 56, 106 S.Ct. at 369, counsel owes a duty to provide accurate information about his client's earliest possible release date, especially when the client asks for it.

The statute which requires Hill to serve one-half rather than one-third of his sentence, with credit for good time, is not like other factors (e.g., "petitioner's behavior and legislative and administrative changes in parole eligibility rules," *Hill, supra,* 731 F.2d at 572) that may affect Hill's eligibility date down the road.[10] To advise his client correctly, the lawyer needed no crystal ball; he had only to consult the Arkansas Statutes and determine the provision applicable to second offenders. See *Strad-*

er, *supra,* 611 F.2d at 63, and *O'Tuel v. Osborne,* 706 F.2d 498, 499 (4th Cir.1983). Act 93, which had been in effect for over two years by the time Hill pleaded guilty, posed no special research challenge.

Not only had Hill explicitly asked his counsel about the parole system in Arkansas, Tr. 23, but he had made clear that the timing of eligibility was the dispositive issue for him in accepting or rejecting a plea bargain. He told his attorney that he considered it no bargain to forego a trial unless his eligibility would be sooner than seven years, which he understood to be the time he could serve with commutation of a life sentence. Tr. 24–26. The Plea Statement bears the signature of Hill's counsel, immediately below the words: "His plea of guilty is consistent with the facts he has related to me and with my own investigation of the case." J.A. 57. Given the attorney's knowledge of his client's particular concern, a failure to check the applicable law was especially incompatible with the objective standard of reasonable representation in *Strickland.*

As for the other component of the *Strickland* test, the District Court's finding of prejudice is hardly clearly erroneous. The judgment that Hill's plea would have been different but for the misadvice he received was well-supported by the record.[11] At the evidentiary hearing, Hill's testimony regarding his conversations with counsel, including those focused on the parole-eligibility dates, went unchallenged. The judge asked Hill: "If [your attorney] had advised you that you would have to do around nine years before you could possibly be paroled, would you have entered the plea?" Tr. 26. Hill responded: "No, sir, I wouldn't, and the reason was just because I at the time believed that I'd have just as good a chance on a life sentence of getting out before nine years." *Id.*

9. An experienced criminal defense attorney and past president of the Arkansas Association of Criminal Defense Lawyers.

10. Hill understood, when he entered his plea, that actual release on parole was not guaranteed. Tr. 31.

11. This part of the *Strickland* test is evaluated subjectively, not objectively. That is, it does not matter whether a reasonable person would have pleaded differently, given the correct information of nine, instead of six, years. What counts is the likelihood that Hill would have pleaded differently.

Hill's rejection of the initially offered 45-year sentence, which he thought carried a nine-year parole-eligibility date, and his subsequent acceptance of the 35-year offer, with the six-year parole eligibility his lawyer described, further support the finding of prejudice. Had Hill known that the 35-year sentence really involved nine-year eligibility for him, it seems reasonably probable that he would have declined to plead guilty in exchange for that sentence.

■ To succeed under *Strickland,* Hill need not show prejudice in the sense that he probably would have been acquitted or given a shorter sentence at trial, but for his attorney's error.[12] All we must find here is a reasonable probability that the result of the plea process would have been different—that Hill "would not have pleaded guilty and would have insisted on going to trial," *Hill, supra,* 474 U.S. at 59, 106 S.Ct. at 370—if counsel had given accurate advice. We uphold the District Court's finding that Hill suffered prejudice as a result of the ineffective counsel he received.[13]

Affirmed.

BOWMAN, Circuit Judge, dissenting.

Although I agree we cannot say that the District Court abused its discretion by reconsidering Hill's case, I respectfully disagree with the conclusion that Hill is entitled to habeas corpus relief.

The identical claim that Hill now asserts was rejected by our Court over five years ago. *See Hill v. Lockhart,* 731 F.2d 568 (8th Cir.1984). In that decision, we affirmed the District Court's denial of habeas relief, and we expressly held that counsel's advice concerning Hill's parole eligibility, even though not entirely accurate, did not amount to constitutionally inadequate performance. *Id.* at 572. Rehearing en banc was granted, and the panel decision there-

by was vacated. On rehearing, however, the en banc Court affirmed the District Court by an equally divided vote, thus sustaining the result reached by the panel decision. 764 F.2d 1279 (8th Cir.1984) (en banc).

Our en banc decision was affirmed by the Supreme Court on procedural grounds. *See Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Holding merely that Hill's allegations were insufficient to satisfy the "prejudice" requirement of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court found it "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel." 474 U.S. at 60, 106 S.Ct. at 371. The Supreme Court thus declined to decide the constitutional merits of Hill's claim.

I believe our original panel decision was correct in holding that Hill's claim lacks constitutional footing. First, I seriously doubt that the Sixth Amendment ever can be brought into play by allegations of incorrect advice concerning parole eligibility. The subject of parole eligibility, though no doubt of keen interest to the accused, is simply not central to what plea bargaining is all about, namely, the obtaining of either reduced charges, a below-the-maximum sentence, or both. Moreover, even indulging in the assumption, without deciding, that a case might be found in which counsel's advice concerning parole eligibility is so far off the mark that the Sixth Amendment right to the effective assistance of competent counsel is violated, in my judgment this is not such a case. For the reasons well-explicated in our 1984 panel opinion, which I will not here restate, I would find no constitutional violation and

---

**12.** Sometimes, a court must consider how prejudicial the error would have been at trial—e.g., when an attorney fails to consider a possible affirmative defense, and accordingly advises the client to plead guilty. See *Hill, supra,* 474 U.S. at 59, 106 S.Ct. at 370.

**13.** We believe that recently Hill was approved for parole. The relief he will receive under our opinion is a trial. If he is found guilty, he could

receive a more severe sentence than the 35 years he got in the first place. It is possible, then, that he could be reimprisoned, even for life. At the oral argument, appointed counsel assured us that Hill is aware of this danger and wishes to press his claim for relief even so. We are grateful to appointed counsel for his diligent service in this case.

therefore would reverse the judgment of the District Court.