Vincent HUNTER, Petitioner-Appellee,

v.

Walter T. FOGG, Superintendent of Eastern Correctional Facility, Respondent-Appellant.

No. 226, Docket 79–2095.

United States Court of Appeals, Second Circuit.

Argued Oct. 26, 1979.

Decided Feb. 15, 1980.

Vivian Berger, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty. of New York County, Robert Pitler, Asst. Dist. Atty., New York City, on the brief), for appellant.

Vincent Hunter submitted a brief for appellee pro se.

Before FRIENDLY, OAKES and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This appeal from a judgment granting a state prisoner a writ of habeas corpus to vacate his conviction concerns a claim that a guilty plea was involuntarily entered for lack of adequate understanding about state parole opportunities.

Petitioner, Vincent Hunter, was indicted on August 16, 1974 by a New York county grand jury for second-degree murder in connection with the shooting death of John Powers. Hunter was also charged with possession of a weapon in connection with the same incident.

On June 14, 1976, Hunter pleaded guilty to manslaughter in the first degree before Justice Burton B. Roberts of the New York Supreme Court. This plea was in satisfaction of both counts of the murder indict-

ment as well as an unrelated indictment charging Hunter with bail-jumping in connection with an earlier case.

At the plea proceeding, Hunter represented by Chester Mirsky and another attorney, admitted that he had intentionally shot and killed Powers on the morning of August 29, 1973. In addition, he acknowledged that he understood that by his plea of guilty he was waiving his right to a trial and his right to confront and cross-examine witnesses.

In response to the Court's questions, Hunter indicated that he understood that the maximum sentence that could be imposed for conviction of manslaughter in the first degree was an indeterminate sentence of eight and one-third to twenty-five years.[1] Justice Roberts then promised that if he ultimately decided to impose an indeterminate sentence with a maximum greater than ten years, Hunter would have the opportunity to withdraw his plea. The Court further indicated that Hunter would have no option to withdraw his plea if the sentence ultimately imposed were an indeterminate sentence with a maximum of ten years or less. Hunter then affirmed his understanding of the conditional nature of his plea. On July 21, 1976, Justice Roberts imposed an indeterminate prison term not to exceed ten years, thereby removing

Hunter's option to withdraw the conditional plea.

In June, 1977, the New York State Parole Board established a minimum period of imprisonment (MPI) for Hunter of five years.[2] The Board's action meant that Hunter, who was entitled to credit toward his MPI for the more than two years he had served in pretrial custody,[3] would not be eligible for parole until mid-1979.

On November 11, 1977, Hunter filed a pro se motion to vacate his conviction, alleging that he had been misled by the court, the prosecutor, and Mirsky, with respect to the length of his possible minimum sentence. Justice Roberts denied the motion without a hearing on February 1, 1978. Hunter exhausted his state court remedies by presenting the same claim in proceedings under Article 78, N.Y.C.P.L.R. *Matter of Hunter v. Roberts,* 63 App.Div.2d 1122, 406 N.Y. S.2d 646 (1st Dept.), *leave to appeal denied,* 45 N.Y.2d 710, 409 N.Y.S.2d 1029, 381 N.E.2d 616 (1978).

By pro se petition for habeas corpus dated November 3, 1978, filed in the United States District Court for the Southern District of New York, Hunter renewed his claim that he had been misled as to the consequences of his guilty plea. His petition essentially alleged that the court, the prosecutor, and his defense counsel had incorrectly informed him that he would be

---

1. New York's sentencing statutes provide, with exceptions not pertinent to this case, that the sentence for felony convictions shall be an indeterminate sentence with a "maximum term" and a "minimum period of imprisonment." N.Y.Penal Law § 70.00 (McKinney Supp.1978). The maximum term permitted is scaled according to the seriousness of the offense. Manslaughter in the first degree is a Class B felony, § 125.20, for which the maximum term can be twenty-five years, § 70.00(2)(b), and the minimum period of imprisonment may be set by the sentencing court as high as one-third of whatever maximum term is imposed in the sentence, § 70.00(3)(b). The minimum period of imprisonment must be at least one year, § 70.00(3), and is established by the New York Parole Board if not set by the sentencing court, § 70.00(3)(c).

2. Under § 805(2) of the New York Correction Law, later renumbered § 212(2), the New York State Parole Board was directed to set the MPI

to be served prior to parole consideration for each person whose indeterminate sentence did not include a minimum period of imprisonment fixed by the court. The law required that this determination be made not sooner than nine months and not later than one year from the date the sentence commenced. Hunter's MPI was set about eleven months after imposition of his sentence.

New York Correction Law § 212 was repealed effective January 1, 1978, 1977 N.Y. Laws c. 904, § 2, and replaced by N.Y. Exec.Law § 259–il(a) (McKinney Supp.1978).

3. At the time Hunter met with the Parole Board in June, 1977, he was not given full credit for time served prior to his plea of guilty. However, by letter dated August 11, 1977, Hunter was informed that he was entitled to full credit for the time served for the periods January 7, 1974 to March 11, 1974 and August 16, 1974 to August 1, 1976.

eligible for parole release consideration *before* he had served one-half of his maximum sentence, whereas as a result of the Parole Board's action in setting his MPI at five years, he was serving a minimum sentence equal to one-half of his maximum sentence.

Affixed to the petition for habeas corpus was an affirmation of Chester Mirsky, the court-appointed attorney who had represented Hunter during plea negotiations and at the plea hearing. In his affirmation Mirsky stated that he had advised his client that he "might anticipate" serving one-third of his maximum sentence prior to parole consideration. The affirmation also reflects Mirsky's belief that at the time of the guilty plea Hunter "hoped" that if the more than two years he had already served in pretrial custody were credited toward a parole eligibility date of one-third of his maximum term, he might be paroled within about one year of the time he started serving his sentence in state prison. Mirsky stated that he had never "promised" Hunter that he would be paroled in one year, but rather had told him that one year would be "the earliest possible eligibility date for parole." Mirsky also indicated that he thought there was merit to Hunter's claim of a misunderstanding concerning the possible sentence consequences of the guilty plea. Noting Hunter's conditional plea included an understanding that he would not be sentenced as a "predicate felon,"[4] Mirsky stated his belief that Hunter would not have pleaded guilty had he known that he would not be eligible for parole release until he served five years of his sentence.

On May 2, 1979, the District Court (Charles H. Tenney, Judge) granted, without a hearing, Hunter's petition for habeas corpus. *Hunter v. Fogg,* 470 F.Supp. 1041 (S.D.N.Y.1979). Judge Tenney found that during the plea proceeding Hunter was not told that the Parole Board had discretionary authority to set the minimum sentence for his crime nor that he "risked—for all

practical purposes—the same sentence as— or worse than—a predicate felon's." *Id.* at 1045 (footnote omitted). Judge Tenney also accepted Hunter's claim that he had been incorrectly informed by Mirsky that his minimum sentence would be one-third of the maximum. *Id.* at 1042, 1044. In vacating Hunter's plea, Judge Tenney credited Hunter's assertion that had he known his plea would result in a five-year minimum sentence, he would have chosen to proceed to trial rather than plead guilty. *Id.* at 1046–47.

■ When a state court guilty plea is alleged to be constitutionally invalid because the defendant was not told or was misinformed about sentencing information requisite to an informed plea, the issue is "whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Caputo v. Henderson,* 541 F.2d 979, 984 (2d Cir. 1976); *Kelleher v. Henderson,* 531 F.2d 78 (2d Cir. 1976). In concluding that Hunter was not aware of sentencing possibilities, Judge Tenney considered both what Hunter was not told and what he was incorrectly told. We disagree that Hunter lacked information necessary for a constitutionally valid guilty plea, and do not reach the second issue under *Caputo* of whether awareness of necessary information would have made any difference. It will be helpful to consider separately the District Court's conclusions as to what Hunter was not told and what he was incorrectly told.

### I.

In concluding that Hunter was not told about sentencing possibilities, Judge Tenney relied on *United States ex rel. Hill v. Ternullo,* 510 F.2d 844 (2d Cir. 1975), for the proposition that a defendant must be told about minimum sentencing possibilities.

---

4. New York Penal Law § 70.06 requires a sentencing court imposing an indeterminate sentence on a defendant with a prior "predicate" felony conviction to fix a mandatory minimum sentence of one-half of the maximum term imposed. Section 70.06 apparently would have applied to Hunter were it not for the fact that the section did not take effect until September 1, 1973, three days after Hunter killed Powers.

Judge Tenney then contended that an MPI established by the New York Parole Board is the equivalent of a minimum sentence for purposes of testing the voluntariness of a guilty plea.

A. There is substantial uncertainty as to what a defendant must be told concerning sentencing minimums. In *Hill* it was stated that a plea is not voluntary if the defendant is not informed of "the minimum *or* maximum sentence possibilities," 510 F.2d at 847 (emphasis original), but it is not entirely clear what the content of the phrase "minimum sentence possibility" should be. The uncertainty arises because of two different variables that affect the release of a sentenced defendant: the length of the sentence selected by the court and the portion of the sentence that must be served prior to eligibility for parole release. Statutes may affect each of these time periods in different ways. For example, a statute may require a court to impose a sentence of no less than x years.[5] While such a statute speci-

fies the lowest maximum sentence a court is permitted to impose, the resulting sentence is usually referred to as a mandatory minimum sentence. A statute may also specify high or low limits as to the portion of a sentence that a defendant must serve in custody before eligibility for parole release: a statute may authorize a court to specify in a sentence that the defendant is not eligible for parole until he has served at least a period that may be as long as y years,[6] or a statute may specify that a defendant is not eligible for parole until he has served at least z years.[7] Thus, a "minimum sentence possibility" could mean either the lowest maximum sentence a court is permitted to impose, or the longest portion of a sentence that a court may require be served as a minimum, or the shortest portion of a sentence that must be served as a minimum.[8]

Whatever the meaning of the phrase "minimum sentence possibility" in *Hill,*[9]

---

5. For example, a defendant convicted of a Class B felony, who has been convicted of a prior felony within ten years of the current offense, must be sentenced to a maximum term of no less than nine years. N.Y.Penal Law § 70.06 (McKinney Supp.1978).

6. For example, a defendant convicted of a Class B felony must be sentenced to an indeterminate sentence, not to exceed twenty-five years, and the minimum period of imprisonment under an indeterminate sentence may be set by the sentencing court as high as one-third the maximum, eight and one-third years. N.Y. Penal Law § 70.00 (McKinney Supp.1978).

7. For example, a defendant convicted of a Class B felony must be sentenced to an indeterminate sentence, and the minimum period of imprisonment under an indeterminate sentence, whether set by the court or, if the court fails to act, by the Parole Board, must be at least one year. N.Y.Penal Law § 70.00 (McKinney Supp.1978).

8. In some circumstances, a requirement that a minimum portion of a sentence be served becomes the equivalent of a mandatory minimum sentence. This can happen when a statutory scheme requires a court to impose a sentence of incarceration with a further requirement that a minimum portion of the sentence be served. In that event, the court presumably could not give a maximum sentence lower than the required minimum time to be served. *See* footnote 12, *infra.*

9. The facts in *Hill* presented a confused situation. The petitioner initially complained that he had been misinformed as to the *maximum* sentence that he might receive. He claimed he was told the maximum would be four years, whereas the actual maximum was fifteen years, which, in fact, Hill received. The attorney who represented Hill at the time of the guilty plea reported that he understood the maximum to be fifteen years and the minimum, in the sense of the highest minimum that the sentencing judge could set, to be as high as five years. However, the attorney was mistaken in thinking that with good behavior Hill "would be out in two-thirds of the minimum time," a period he somehow calculated to be two years. 510 F.2d at 846. The case was remanded for hearing to resolve the apparently conflicting versions reported by the petitioner and by his attorney. The holding in *Hill* appears to be that a plea is involuntary when a defendant is misinformed that he will have to serve only two years when in fact he may have to serve as much as five years. In all likelihood, the phrase "minimum sentence possibility" in *Hill* meant the longest portion of a sentence that a sentencing judge could require the defendant to serve as a minimum.

Another decision involving an attack on a guilty plea also leaves some uncertainty as to the meaning of minimum sentence possibility. In *United States ex rel. Rosner v. Warden, Sing Sing Prison, Ossining, New York,* 520 F.2d 1206 (2d Cir. 1975), petitioner pleaded guilty to

events since that decision have illuminated its appropriate content. In 1975 Rule 11 of the Federal Rules of Criminal Procedure was amended to clarify the previous requirement that a federal defendant be advised of the "consequences" of a guilty plea. P.L. 94–64, § 3, 89 Stat. 370 (1975); see H.R.Doc.No.93–292, 93d Cong., 2d Sess. (1974) (amendment as proposed by Supreme Court). As currently worded, Rule 11 provides that a defendant need be informed of only two sentencing consequences: "the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." The meaning of these words is made abundantly clear in the Advisory Committee Note to Rule 11: "The objective is to insure that a defendant knows what minimum sentence the judge must impose and what maximum sentence the judge may impose. . . . Giving this advice tells a defendant the shortest mandatory sentence and also the longest possible sentence for the offense to which he is pleading guilty." Thus, for federal defendants, Rule 11's concern about sentencing minimums refers only to a statutory mandatory minimum, the lowest sentence the judge is permitted to impose. It is not concerned at all with statutory provisions affecting the date of earliest release from confinement, whether that date is specified by statute or by the sentencing judge pursuant to statutory authority. This is made clear by the Advisory Committee's explicit discussion of the possibility of parole ineligibility. The Committee's Note says, "It has been suggested that is is desirable to inform a defendant of additional consequences which might follow from his plea of guilty." The Note then illustrates several consequences, including the possibility of ineligibility for parole. "Under the rule," the Note continues, "the judge is not required to inform a defendant about these matters, though a judge is free to do so . . . ." [10]

The current version of Rule 11 carries significant implications as to the constitutional requirements of a valid guilty plea. If it were unconstitutional to accept a guilty plea without informing a defendant of the minimum amount of time he might have to serve pursuant to the maximum sentence authorized for his offense, then most federal felony defendants would have to be informed that they might have to serve as much as one-third of the maximum sentence for their offenses. This consequence occurs because a federal prisoner, sentenced to more than one year and less than thirty years or life, is not eligible for parole until the one-third point of a sentence, 18 U.S.C. § 4205(a) (1976), unless the sentencing judge elects to set a lower parole eligibility date under § 4205(b)(1) or provide for parole eligibility at any time under § 4205(b)(2). On the same assumption, all federal misdemeanants would have a strong argument that they were entitled to be told that the minimum time they will have to serve is their actual sentence less only good time credits, 18 U.S.C. § 4161, since they are not eligible for parole, 18 U.S.C. § 4205. We see no reason to believe that compliance with Rule 11 risks the entry of unconstitutional guilty pleas simply because that Rule dispenses with any requirement that defendants be informed of

---

second-degree murder, which was punishable by a maximum term of life imprisonment. He alleged that he had been told at the time of the plea that as a youth aged 17 he was eligible for a sentence to a reformatory not to exceed five years. Though he characterized his complaint as erroneous advice concerning the possible minimum sentence, his grievance really concerned misinformation as to a possible alternative maximum sentence. Relying on *Hill, Rosner* was remanded for a hearing on the merits.

**10.** Under Rule 11, as it existed prior to the 1975 amendment, the circuits were divided on

whether parole eligibility was a "consequence" about which the defendant had to be told at the time of his guilty plea. *Compare Bye v. United States,* 435 F.2d 177 (2d Cir. 1970) (parole ineligibility must be explained); *Durant v. United States,* 410 F.2d 689 (1st Cir. 1969) (same), *with Trujillo v. United States,* 377 F.2d 266 (5th Cir.), *cert. denied,* 389 U.S. 899, 88 S.Ct. 224, 19 L.Ed.2d 221 (1967) (parole ineligibility need not be explained); *Smith v. United States,* 116 U.S. App.D.C. 404, 324 F.2d 436 (D.C. Cir. 1963), *cert. denied,* 376 U.S. 957, 84 S.Ct. 978, 11 L.Ed.2d 975 (1964) (same).

the minimum time they might have to serve.

■ Rule 11 makes a sensible distinction between requiring that a defendant be informed about a mandatory minimum sentencing provision and not requiring that he be informed concerning the minimum portion of a sentence that might have to be served in custody. When a defendant is told of a maximum possible sentence, the very characterization of that term as a maximum implies that the sentencing judge has discretion to select a sentence anywhere up to the maximum. If in fact the legislature has circumscribed the judge's discretion by specifying a mandatory minimum sentence, fundamental fairness requires that the defendant be so informed. However, absent a mandatory minimum provision, information concerning the maximum possible sentence carries no similar implication concerning how much of the sentence will have to be served. Therefore, whether parole is not possible until at least one year has been served,[11] or might not be possible until as much as one-third of the sentence imposed has been served, or is never possible because of parole ineligibility are all possibilities that might usefully be told to a defendant but are not required to be told, either by Rule 11 or the Constitution.

Since Rule 11 permissibly does not require federal defendants to be informed of the minimum portion of their sentence they might have to serve, we should not require that state defendants be given this information. "When a guilty plea is taken by a state judge, we cannot apply to him as a matter of federal constitutional law a higher standard than we apply to a federal district judge performing the same function." *Kelleher v. Henderson,* 531 F.2d 78, 82 (2d Cir. 1976).

■ We therefore conclude that the constitutional requirements of a state court guilty plea include informing a defendant of a mandatory minimum sentence (the lowest possible maximum), but do not include informing him of the minimum portion of his sentence a court may require him to serve. In this case the effect of the state sentencing statutes was to require that Hunter receive a maximum sentence of no less than one year.[12] Hunter makes no claim that he was unaware of this mandatory minimum sentence. His claim does not concern the lowest maximum sentence that could have been imposed; it concerns only the minimum portion of his sentence he might be required to serve. He concedes he knew he would have to serve at least one year, and, in any event, with his jail-time credit of two years, a one-year mandatory minimum sentence had no significance in his particular circumstances. His plea therefore cannot be vacated for unawareness of a mandatory minimum sentence. Nor can it be vacated for unawareness of the portion of his sentence that the sentencing court could require him to serve, since we conclude that a valid guilty plea does not require awareness of this circumstance.

■ B. Having concluded that the constitutional requirements of a state court guilty plea do not include informing a defendant of the minimum portion of a sentence that a court may require him to serve, we see even less need to require that a defendant be informed of the minimum period of imprisonment that might be set by a parole board. The setting of an MPI is more analogous to a parole release decision than to a minimum judicial sentence. *Walker v. Oswald,* 449 F.2d 481, 484 (2d Cir. 1971). Even after the Parole Board set Hunter's MPI at five years, it retained dis-

---

11. *See* footnote 8, *supra.*

12. A Class B felon, with exceptions not applicable to Hunter, must be sentenced pursuant to § 70.00, N.Y.Penal Law § 60.05 (McKinney 1975). Section 70.00, with exceptions not applicable to Hunter, requires that sentences for felony convictions must be an indeterminate sentence and specifies that the minimum period of imprisonment under an indeterminate sentence must be at least one year. N.Y.Penal Law § 70.00 (McKinney 1975). Presumably, a sentencing judge, setting the maximum term of an indeterminate sentence, is not permitted to set that maximum any lower than the one year that is specified as the lowest possible minimum sentence.

cretion to reduce the MPI.[13] Alternatively, if the Parole Board in this case had initially set a lower MPI, for example, at the one-third point or even less, it would have retained full discretion to deny parole at the end of the MPI and continue Hunter in custody until he had served five years of his sentence. In fact, having set a five-year MPI in this case, the board exercised its discretion to keep Hunter in custody beyond five years and to defer further consideration of his status until July, 1980. By contrast, had Justice Roberts imposed a sentence of not less than three and one-third nor more than ten years, the minimum period of time Hunter would have been required to serve in custody would have been judicially determined without any possibility of administrative change.

■ Therefore, even if Hunter was not aware that the Parole Board would make the decision as to how much of his ten-year sentence he would have to serve in custody before consideration for parole,[14] his plea was not unconstitutionally entered. The voluntariness of a guilty plea is not undermined by lack of explanation as to the mechanics of a parole system, such as a Board's authority to specify an MPI as a first step in its ultimate parole release decision.

## II.

■ In addition to the conclusion that Hunter was uninformed, the District Court also accepted his contention that he was significantly misinformed. Judge Tenney concluded that Hunter had been misinformed by Mirsky that his minimum period of imprisonment would be no greater than one-third of the maximum ten-year sentence. The record does not support this conclusion. Mirsky's affirmation reports that Hunter consulted with Mirsky as to the minimum period of imprisonment that Hunter "might anticipate." According to Mirsky, Hunter was "advised" of a period of one-third of the maximum term. This advice concerned the minimum period Hunter "might anticipate," not the minimum period he was assured of receiving. This interpretation of Mirsky's affirmation is confirmed by the statement two sentences later that Mirsky believed that a minimum eligibility date in excess of one-third the maximum term was "unlikely." That very statement implies that an MPI greater than one-third of the sentence was a distinct possibility. Mirsky's version of his report to Hunter therefore provides no basis for concluding that he did more than give Hunter a prediction "couched in the language of hope" and not "promise." *United States ex rel. Scott v. Mancusi,* 429 F.2d 104, 108 (2d Cir. 1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).[15]

■ Judge Tenney based part of his conclusion that Hunter had been misinformed about sentencing possibilities on the fact that Hunter had been assured at the time

---

**13.** Section 805(2) of the New York Correction Law, discussed in note 2, *supra,* expressly provided that even after having set the MPI the Parole Board had the discretion to "make subsequent determinations reducing such minimum period provided that the period shall in no case be reduced to less than one year."

**14.** At sentencing Hunter heard Justice Roberts refer to the possibility that the Parole Board could hold Hunter in custody "for the maximum period of time." Judge Tenney noted this remark, but felt that the decision as to voluntariness of the plea should turn on what was said when the plea was taken. However, remarks made at the time of sentencing need not be ignored in determining what interpretation should be placed on remarks made at the time of the plea, especially when the defendant gives

no indication that the sentencing remarks alter his prior understanding.

**15.** Mirsky also reports that he "indicated that one year would be the earliest possible eligibility date for parole." It is not clear whether this refers to the statutory one-year minimum below which the Board may not establish an MPI or to the fact that with approximately two years of pretrial custody time likely to be credited toward his sentence, parole eligibility might occur one year after Hunter entered prison. Either way, the reference to the "earliest possible eligibility date for parole" implies that a longer time was also possible.

of the plea that he would not be sentenced as a "predicate felon." When a prior felony qualifies as the predicate for enhanced sentencing on a pending charge, the sentencing judge is required to fix the minimum sentence at one-half of whatever maximum sentence is imposed. N.Y.Penal Law § 70.-06 (McKinney Supp.1978). The record makes clear that Hunter was assured he would not be sentenced as a predicate felon, but this assurance was not misinformation at the time it was given, nor did it become so in light of subsequent developments. The assurance that Hunter would not be sentenced as a predicate felon was observed. Having imposed a ten-year maximum sentence, Justice Roberts could not have set a minimum sentence of five years,[16] and, in fact, he elected to set no minimum sentence at all. As previously pointed out, the Parole Board's decision, as a matter of discretion, not to release Hunter until he had served at least five years is not the equivalent of a judicially imposed five-year minimum sentence.

■ Though the record does not support Judge Tenney's conclusion that Mirsky assured Hunter that his minimum period of imprisonment would not exceed one-third of his sentence, no remand is necessary to permit a hearing on this claim, since even if the assurance had been given, it would not render the plea involuntary. At most such an assurance would have led Hunter to understand that at some point within the first one-third of his sentence he would have an opportunity for parole release. The fact remains that nothing in the statute under which he was sentenced or in the sentence as imposed prevented him from having that opportunity. And, in fact, he received that opportunity. When the Parole Board met eleven months after Hunter was sentenced to consider what MPI to select, it had complete discretion to select an MPI that would have made Hunter eligible for parole immediately, in view of his jail-time credit, or at the one-third point of

his sentence. The fact that the Board exercised its discretion to set an MPI at five years does not alter the fact that Hunter had an opportunity to persuade the Board that he should be released after serving no more than one-third of his sentence. Hunter clearly would have no complaint if the Board had set an MPI of three and one-third years and then, at his parole hearing at the end of the MPI, had denied parole and continued him to the one-half point of his sentence. There is no constitutional significance to the fact that the Board exercised its discretion to accomplish precisely the same result by initially setting the MPI at five years.

For all of these reasons, the judgment vacating Hunter's conviction is reversed.

---

16. The predicate felony provision did not take effect until after Hunter's offense was committed. *See* note 4, *supra.*