Suliman D. AEID, Petitioner,

v.

Floyd G. BENNETT, Superintendent,
Respondent.

No. 99CV2088.

United States District Court,
N.D. New York.

Jan. 3, 2002.

Suliman D. Aeid, Elmira, NY, Pro Se.

Eliot L. Spitzer, Attorney General of the State of New York, Office of the Attorney General, Syracuse, NY (Senta Siusa, Esq., Assistant Attorney General, of counsel), for Respondent.

## MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Petitioner Suliman D. Aeid was found guilty on March 21, 1996, following a jury trial in Onondaga County Court, of sodomy in the first degree (two counts), attempted rape in the first degree, and menacing in the second degree. On April 11, 1996, Petitioner was sentenced to a total indeterminate term of imprisonment of twelve to twenty-four years. S.T. 4–7.[1] On November 7, 1999, Petitioner filed for a writ of habeas corpus challenging the constitutionality of his state court convictions and his subsequent incarceration pursuant to 28 U.S.C. § 2254. Petitioner alleges that (1) the trial court failed to charge the jury on a lesser included offense; (2) he was denied the effective assistance of counsel[2];

---

1. "S.T." followed by a number refers to the page of the April 11, 1996 sentencing transcript.

2. Petitioner makes three claims of ineffective assistance of counsel: (a) counsel threatened petitioner; (b) counsel failed to call an expert witness; and (c) at the plea bargaining stage, defense counsel gave Petitioner erroneous advice regarding the term of incarceration faced if convicted on the indicted charges, which Petitioner relied upon when rejecting the prosecution.

and (3) the prosecutor improperly submitted documents to the trial court ex parte.

This matter was referred to Magistrate Judge David R. Homer for a Report–Recommendation ("Report") pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Northern District of New York. Magistrate Judge Homer filed his Report on September 26, 2001. After being granted an extension of time to file objections, Respondent filed objections to the Report on October 19, 2001. Petitioner did not file objections to the Report. The matter is now before the Court for the adoption or rejection of the Report.

With the exception of Petitioner's ineffective assistance of counsel claim at the plea bargaining stage, the Magistrate Judge's Report denied all of Petitioner's claims for pursuing this habeas petition. The Report found merit in Petitioner's claim that, during the plea bargaining phase of his case, defense counsel's erroneous advice regarding Petitioner's possible term of incarceration was prejudicial to Petitioner. Respondent objects only to the portion of the Report finding ineffective assistance of counsel at the plea bargaining stage and to the proposed remedy for the constitutional violation. As Petitioner made no objection to the Report, the Court adopts the Magistrate Judge's Report, except as it relates to Petitioner's claim of ineffective assistance of counsel during the plea bargaining stage of his case, and the proposed remedy. The merits of that claim and the appropriate remedy are discussed below.

## I. BACKGROUND

### A. Events of October 29, 1995

On October 29, 1995, Petitioner and two other individuals entered Yak's Place, a bar on Burnett Avenue in Syracuse, New York. T.120–22.[3] After having a few drinks and playing pool, Petitioner and the two other individuals left the bar. T.124–25. Approximately ten minutes later, Petitioner returned to the bar by himself. T.124–25. Petitioner ordered another beer, then asked the bartender, Ellen Taylor, if she wanted to play pool. T.125–26. At this time, there were no customers in the bar other than Petitioner, and Taylor was the only employee in the bar. T.125–26. Petitioner drew a gun on Taylor and attempted to rape her. T. 125–31. Petitioner forced Taylor to first perform oral sex on him, then to have anal intercourse. T. 131–36. Petitioner then threatened to kill Taylor and her daughter if she told anyone what he had done to her. T. 136.

### B. Procedural Background

On November 17, 1995, a grand jury returned a four count indictment charging Petitioner with sodomy in the first degree (two counts), attempted rape in the first degree, and menacing in the second degree. Following a jury trial, Petitioner was found guilty of all charges. Petitioner was sentenced to a term of imprisonment of twenty-four years, with a minimum of twelve years, for the conviction of sodomy in the first degree, each charge to run concurrently. S.T. 4–7. Petitioner was also sentenced to a concurrent seven and one-half year term of imprisonment for rape in the first degree, and a ninety day term of imprisonment for menacing in the second degree. *See id.*

Petitioner appealed his conviction to the Appellate Division, Fourth Department. The conviction was affirmed on July 3, 1997. *See People v. Aeid,* 241 A.D.2d 920, 663 N.Y.S.2d 1022 (4th Dep't.1997). Petitioner's motion for leave to appeal to the New York State Court of Appeals was

---

**3.** "T" followed by a number refers to the page of the trial transcript.

denied. *See People v. Aeid,* 90 N.Y.2d 1009, 666 N.Y.S.2d 104, 688 N.E.2d 1387 (1997). Petitioner then moved to reargue before the Court of Appeals. That motion was also denied. *See People v. Aeid,* 91 N.Y.2d 868, 668 N.Y.S.2d 566, 691 N.E.2d 638 (1997). Subsequently, in Onondaga County Court, Petitioner made a motion to vacate the judgment of conviction pursuant to New York State Criminal Procedure Law § 440.10 (McKinney 1994). This motion was denied on March 18, 1999. Petitioner then filed a writ of habeas corpus with this Court pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his state court convictions and his subsequent incarceration.

## C. Sentence Exposure

Prior to trial, the prosecution and defense counsel conducted plea negotiations. Petitioner argues that he rejected an offer by the prosecutor based on defense counsel's erroneous advice regarding his sentence exposure. Petitioner claims that Thomas Lenkiewicz, his assigned counsel, failed to properly convey to him the term of incarceration he faced if convicted of the crimes charged. Lenkiewicz ("Counsel") told Petitioner that he faced a term of imprisonment of eight and one-third to twenty-five years. H.T. 4–7.[4] Counsel arrived at this figure by first determining that a the charge of sodomy, a class B felony, carries a maximum term of incarceration of twenty-five years,[5] and that an individual convicted of the crime must serve a minimum of one-third of the maximum, or eight and one-third years before becoming eligible for parole.

When Counsel informed Petitioner of his possible term of imprisonment if convicted, he was unaware of new state sentencing guidelines that became effective on October 1, 1995.[6] This new law provided that the mandatory minimum term of imprisonment served by an individual convicted of a violent felon is one-half the maximum sentence imposed.[7] In Petitioner's case, if sentenced to the maximum twenty-five years he would be required to serve, at a minimum, twelve and one-half years, before becoming eligible for parole release.

Petitioner was offered a plea by the prosecution of fifteen years with a manda-

4. "H.T." followed by a number refers to the page of the August 13, 2001 Evidentiary Hearing before Magistrate Judge David R. Homer.

5. *See* N.Y. Penal Law § 70.02(3)(a) (McKinney 1998) ("The maximum term of an indeterminate sentence for a violent felony offense must be fixed by the court as follows (a) for a class B felony, the term must be at least six years and must not exceed twenty-five years.") This section has been amended to read "the term must be at least five years and must not exceed twenty-five years." N.Y. Penal Law § 70.02(3)(a) (McKinney 1998). (Supp.2001); *see also* McKinney's 1998 Session Laws of New York, pp. 1451, 1489.

6. In 1995, whole new sentencing concepts were introduced in New York, along with extensive amendments to the existing sentencing laws. These amendments became effective on October 1, 1995. Amazingly as it may seem, Petitioner's counsel was not the only one unaware of the new sentencing guidelines. During plea negotiations, neither defense counsel, the prosecutor, nor the judge were aware of the new law and its effect on Petitioner's sentence exposure. One of the laws changes included the treatment of first felony offenders. The law specifies that the minimum period of an indeterminate sentence for those convicted of a violent felony offense must be *one-half the maximum* term of imprisonment imposed. *See* N.Y. Penal Law § 70.02(4) (McKinney 1998). It was not until Petitioner's sentencing that all parties became aware of the change.

7. *See* N.Y. Penal Law § 70.02(4) (McKinney 1998). This statute was applicable at the time of Petitioner's sentencing, but has subsequently been repealed. *See* McKinney's 1998 Session Laws of New York, pp. 1451, 1489.

tory minimum of five years imprisonment, as both the prosecutor and the trial court were unaware of the change in the law. H.T. 9–10. This offer was made on a Friday, with the trial scheduled to begin the following Monday. Petitioner asked for the weekend to consider the offer. The trial court denied his request for a brief delay and Petitioner then rejected the plea offer despite the urging of his Counsel that he accept the offer. H.T. 16–19. Petitioner alleges that if he had known that his actual sentence exposure was twelve and one-half to twenty-five, rather than eight and one-third to twenty-five, as conveyed to him by Counsel, he would have accepted the prosecutor's plea offer. Petitioner was ultimately sentenced to a term of imprisonment of twenty-four years with a twelve year minimum.

The issue in this case is whether circumstances may exist where erroneous advice, given by counsel as to parole eligibility, and relied upon by Petitioner in rejecting a plea offer, may be deemed constitutionally ineffective assistance of counsel. The Court finds that, given the facts of this case, Counsel's misinformation rises to an ineffective assistance of counsel violation.

## II. DISCUSSION

■ The Magistrate Judge's Report recommended the termination of all of Petitioner's claims with the exception of his claim of ineffective assistance of counsel at the plea bargaining stage. Respondent objects to this portion of the Report, as well as to the recommended remedy for this violation.[8] It is the duty of this Court to "make a de novo determination of those portions of the report or specified pro-

posed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that Petitioner's Sixth Amendment Right to effective assistance of counsel has been violated. An analysis of Petitioner's claim and the Court's remedy of the violation follows.

### A. Ineffective Assistance of Counsel

■ The Sixth Amendment guarantees the right to effective assistance of counsel in criminal proceedings. The Sixth Amendment right to counsel attaches at all critical stages in the proceedings "after the initiation of formal charges," *Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), which has been held to include plea negotiations. *See Boria v. Keane*, 99 F.3d 492, 496–97 (2d Cir.1996) cert. denied 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997)(holding that ineffective assistance of counsel during plea negotiations justified § 2254 habeas relief). A claim for ineffective assistance requires a showing that (1) the trial counsel's representation was so objectively deficient "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that there is a reasonable probability that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceedings—in other words, "the result of the proceeding would have been different." *Strickland v. Washington*, 466

---

**8.** Respondent objects to the Report's proposed remedy requiring Respondent to either (1) reduce Petitioner's sentence to a term of seven and one-half to fifteen years imprisonment, or (2) if the prosecution can rebut the presumption of vindictiveness, offer Petitioner a sentence greater than seven and one-half to fifteen years and, if rejected by Petitioner, his conviction will be vacated and a new trial granted.

U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 In reviewing an ineffective assistance claim, the court must judge the defense counsel's performance according to an objective standard of reasonableness, maintaining a presumption of counsel's adequacy. *Id.* at 688–89, 104 S.Ct. 2052. In deciding whether a counsel's performance is ineffective, a court must consider the totality of the circumstances, including aspects of evidence both beneficial and detrimental to defendant's case. *See id.,* at 690, 104 S.Ct. 2052; *see also Huffington v. Nuth,* 140 F.3d 572, 578 (4th Cir.1998). The defendant must point to actual ineffectiveness, through specific errors or omissions of counsel. *See United States v. Cronic,* 466 U.S. 648, 665, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

 To satisfy the second (prejudice) prong of the test, the defendant must show that the counsel's errors were prejudicial and deprived defendant of a fair trial, a trial whose result is reliable. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Defendant must demonstrate that there is a "reasonable probability" that "absent counsel's deficient performance, ... the outcome of the proceeding would have been different." *Mayo v. Henderson,* 13 F.3d 528, 534 (2d Cir.1994); *see also McKee v. United States,* 167 F.3d 103, 106 (2d Cir.1999); *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052.

### B. Petitioner's Claim

Petitioner contends that he was denied effective assistance of counsel at the plea bargaining stage of his case. Petitioner claims that he rejected the prosecution's plea offer because his attorney supplied him with information about parole eligibility that was erroneous. Specifically, Counsel informed petitioner that, if convicted, he faced a maximum term of imprisonment of twenty-five years, requiring him to serve a minimum of one-third of his sentence, or eight and one-third years, before becoming eligible for parole. Due to the new sentencing guidelines, however, if sentenced to the maximum twenty-five years, Petitioner would be required to serve, at a minimum, one-half of his sentence before becoming eligible for parole. Petitioner argues that he would have accepted the plea offer had he known that his actual sentence exposure was twelve and one-half to twenty five-years rather than eight and one-third to twenty-five years.

### 1. Objectively Deficient

 There is no constitutional right to a plea bargain. *See Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977); *see also United States v. West,* 2 F.3d 66, 69 (4th Cir.1993) (stating that a "plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest.") (*quoting Mabry v. Johnson,* 467 U.S. 504, 507, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). In *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Supreme Court extended the ineffective assistance of counsel standard pronounced in *Strickland* to claims arising out of plea bargain negotiations. *See Hill,* 474 U.S. at 57–58, 106 S.Ct. 366. *Hill* established that a defendant who is represented by counsel retains the right to make his own reasonably informed decision to accept or reject a plea offer. *See Id.,* 474 U.S. at 56, 106 S.Ct. 366; *see also Von Moltke v. Gillies,* 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) ("[P]rior to trial an accused is

entitled to rely on his counsel ... to offer his informed opinion as to what plea should be entered.").

■■■■ To satisfy the first prong of the ineffective assistance of counsel test, the Court must determine if Counsel's representation falls below an objective standard of reasonableness required during plea negotiations. *See Hill,* 474 U.S. at 56–57, 106 S.Ct. 366. When determining the validity of a guilty plea entered into on the advice of counsel, the validity of the plea will depend on whether "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.,* 474 U.S. at 56, 106 S.Ct. 366 (*quoting North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). In the present case, where the plea was *rejected* by Petitioner against the advice of counsel, the test for the voluntariness and validity of Petitioner's rejection of the plea will depend on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases" during plea negotiations in order for the Petitioner to make "a voluntary and intelligent choice among the alternative courses of action open" to him. *Hill,* 474 U.S. at 56, 106 S.Ct. 366 (1985) (internal quotations omitted).

Applying the first prong of the test, the Second Circuit has observed that "[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case ... [and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision.' " *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998) (*quoting Boria v. Keane,* 99 F.3d 492, 496–97 (2d Cir.1996) [9]). A defendant relies heavily on counsel's advice at this critical stage and having "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Gordon,* 156 F.3d at 380 (*quoting United States v. Day,* 969 F.2d 39, 43 (3d Cir.1992)). Where counsel grossly underestimates a clients sentencing exposure, counsel "breach[es] his duty as a defense lawyer ... 'to advise his client fully on whether a particular plea to a charge appears desirable.' " *Gordon,* 156 F.3d at 380 [10] (quoting *Boria,* 99 F.3d at 496).

### a. Minimum Possible Sentence

■■■■ Counsel does not have to provide his client with an estimate of the probable sentencing range that would be applied under the guidelines. *See United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989). However, counsel should explain the maximum and minimum statutory penalties ap-

---

9. In *Boria,* the petitioner rejected a plea offer of one to three years. He was subsequently sentenced to a term of imprisonment of twenty years to life. At petitioner's evidentiary hearing, his former defense attorney testified that he "had not in any way or at any time discussed with the petitioner the advisability of accepting or rejecting the offered plea" even though the defense attorney said "that his client's decision to reject the plea bargain was suicidal." *Boria,* 99 F.3d at 496.

10. In *Gordon,* petitioner rejected a plea offer of seven years, allegedly as a result of his attorney's gross underestimate of his maxi-

mum sentencing exposure under the guidelines. Defense counsel informed petitioner that a conviction would result in a sentence of ten years. Petitioner was found guilty and sentenced to seventeen and one-half years. The Second Circuit upheld the district court's decision granting petitioner's § 2255 motion. The Second Circuit held that "[b]y grossly underestimating Gordon's sentencing exposure ... [his attorney] breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plea to a charge appears desirable.' " *Gordon,* 156 F.3d at 381 (*quoting Boria,* 99 F.3d at 496).

plicable to the charges the client faces. See *Slevin v. United States*, 71 F.Supp.2d 348, 354–55 (S.D.N.Y.1999) (*citing United States ex rel. Hill v. Ternullo*, 510 F.2d 844, 847 & n. 5 (2d Cir.1975)); *see also Charris v. Artuz*, 32 F.Supp.2d 139, 142 (S.D.N.Y.1998); *see also Gordon*, 156 F.3d at 380.

There is some confusion as to what a defendant must be told concerning sentencing minimums. In *United States ex rel. Hill v. Ternullo*, 510 F.2d 844 (2d Cir.1975), the Second Circuit simply stated that a plea is not voluntary if the defendant is not informed of "the minimum or maximum sentence possibilities," *Ternullo*, 510 F.2d at 847, but it is not clear what the content of the phrase "minimum sentence possibility" should be. The uncertainty exists because of two different variables that affect the release of a sentenced defendant: (1) the length of the sentence selected by the court; and (2) the portion of the sentence that must be served prior to eligibility for parole release. *See Hunter v. Fogg*, 616 F.2d 55 (2d Cir.1980). The Second Circuit noted the effect of New York Statutes on these variables. A statute may require the court to sentence a defendant to no less than × years.[11] This type of statute, specifying the lowest possible maximum sentence a court is allowed to impose, is referred to as a mandatory minimum sentence. *See Hunter*, 616 F.2d at 60. A statute may also specify that a defendant is not eligible for parole release until he has served a period of at least y years.[12] Thus, the "minimum sentence possibility" could mean either the lowest possible maximum sentence a court is allowed to impose, or the shortest portion of the sentence that must be served before becoming eligible for parole. *See id.*, 616 F.2d at 60. The Second Circuit in *Hunter* held that "the constitutional requirements of a state court guilty plea include informing a defendant of a mandatory minimum sentence (the lowest possible maximum), but do not include informing him of the minimum portion of his sentence a court may require him to serve" before becoming eligible for parole. *Hunter*, 616 F.2d at 61[13]; *see also People v. Ramos*, 63

---

**11.** For example, a defendant convicted of a class B felony, such as sodomy in the first degree as was Petitioner in this case, must be sentenced to a maximum term of imprisonment that "must be at least five years and must not exceed twenty-five years." N.Y. Penal Law § 70.02(3)(a) (McKinney 1998) (Supp.2001). At the time of Petitioner's sentencing, the applicable statute read "the term must be at least six years and must not exceed twenty-five years." N.Y. Penal Law § 70.02(3)(a) (McKinney 1998); *see also* McKinney's 1998 Session Laws of New York, pp. 1451, 1489.

**12.** For example, the minimum period of imprisonment for a defendant convicted of a violent felony offense "must be fixed by the court at one-half of the maximum term imposed and must be specified in the sentence." *See* N.Y. Penal Law § 70.02(4) (McKinney 1998). This statute was applicable at the time of Petitioner's sentencing, but has subsequently been repealed. *See* McKinney's 1998 Session Laws of New York, pp. 1451, 1489.

**13.** In *Hunter*, defendant Hunter pleaded guilty to manslaughter in the first degree. Defendant indicated that he understood that the maximum sentence that could be imposed for a conviction of manslaughter in the first degree was an indeterminate sentence of eight and one-third to twenty-five years. The trial judge imposed an indeterminate prison term not to exceed ten years. The New York State Parole Board established a minimum period of imprisonment for Defendant of five years. Defendant argued in his petition that the court, the prosecutor, and his defense counsel had incorrectly informed him that he would be eligible for parole release consideration before he had served one-half of his maximum sentence (in other words, that he would be eligible for parole after serving 1/3 of his sentence) whereas as a result of the Parole Board's action in setting his minimum period of imprisonment at five years, he was serving a minimum sentence equal to one-half of his maximum sentence. The Second Circuit held that the constitutional requirements

N.Y.2d 640, 643, 479 N.Y.S.2d 510, 468 N.E.2d 692 (1984).

### b. Analysis

In analyzing this case, the Court will look at what information Petitioner was given with respect to his decision to accept or reject the plea and the erroneous information he was given. First, there is no claim that Counsel misadvised Petitioner as to the desirability of the plea offer. Unlike *Boria*, Counsel in this case discussed the plea offer with Petitioner and the consequences of accepting or rejecting the offer. Counsel and Petitioner not only discussed the advisability of accepting the plea offer, but Counsel advised Petitioner to accept the plea in light of the evidence accumulated by the prosecution. H.T. at 18. Additionally, Counsel was correct in advising Petitioner that he faced a maximum sentence of twenty-five years if convicted. H.T. at 6. There is no claim by Petitioner that Counsel failed to inform him of the statutory mandatory minimum sentence (the lowest possible maximum) of six years.

Petitioner's claim rests solely with the fact that Counsel misinformed him as to his parole eligibility if he were convicted and sentenced to the maximum twenty-five years imprisonment. His claim does not concern the lowest maximum sentence that could have been imposed; it concerns only the minimum portion of his sentence he might be required to serve. The Supreme

Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts." *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

In this case, however, Petitioner was informed, incorrectly, that if sentenced to the maximum twenty-five years, he would be eligible for parole after serving one-third of his sentence. While there is no duty imposed upon Counsel to inform his client of parole eligibility, *see id.; see also Hunter v. Fogg*, 616 F.2d 55 (2d Cir. 1980), when Counsel does inform his client of statutorily derived minimum terms of incarceration for parole eligibility, Counsel must be correct in his advice. Where the court, the prosecutor, and his defense counsel all informed Petitioner that he would be eligible for parole release consideration after serving one-third of his sentence, Petitioner had every right to trust in the information given him and make his decision to accept the plea offer or proceed to trial upon such information.[14] The fact that Petitioner in this case was misinformed causes concern over whether Petitioner received effective assistance of counsel, and was treated fairly by the judicial system.[15]

---

of a state court guilty plea include informing a defendant of a mandatory minimum sentence (the lowest possible maximum), but do not include informing him of the minimum portion of his sentence a court may require him to serve before becoming eligible for parole.

**14.** The Court notes that Counsel's advice to Petitioner would have been entirely appropriate had he correctly informed Petitioner that he would become eligible for parole release

consideration after serving one-half of his sentence.

**15.** Petitioner Aeid's case is distinguishable from *Hunter v. Fogg*, 616 F.2d 55 (2d Cir. 1980) in that defendant Hunter was not misinformed as was Petitioner. Hunter was informed of the maximum possible sentence, and he made no claim that he was unaware of the mandatory minimum sentence (the lowest possible maximum). The *Hunter* court stated that it would not vacate Hunter's sentence

■ While there is no constitutional right to plea bargaining, once it has begun it must comply with basic standards of fairness and honest dealing. When a defendant is wrongly advised of the statutory penalties he faces, he is denied the ability to "make a voluntary and intelligent choice among the alternative courses of action open to [him]." *Hill,* 474 U.S. at 56, 106 S.Ct. 366. Plea bargaining is a very real and significant part of our criminal system. Any misrepresentation or significant mistake of law at the plea bargaining stage will vitiate the process and force a defendant into a trial that might have otherwise been avoided. This is unacceptable in a court system that proclaims that "[t]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case . . . ." *United States v. Gordon,* 156 F.3d 376, 380 (2d Cir.1998).

In this case, Petitioner was incorrectly advised by Counsel that the maximum statutory penalty he would incur if he was found guilty after a trial was twenty-five years with a mandatory term of eight and one-third years imprisonment before becoming eligible for parole. In reality, Petitioner faced a mandatory term of twelve and one-half years before becoming eligible for parole. This difference of four years and two months is a substantial mistake by Counsel which drastically altered the consequences for Petitioner. Having been advised, incorrectly, of the statutory terms of his parole eligibility, this additional four years and two months constitutes a

real difference in Petitioner's "minimum possible sentence."

In applying the *Strickland* test to this issue, the Court must determine whether Petitioner was fully informed of his rights and possible consequences of rejecting the plea offer. Counsel's failure to be cognizant of the law, which lack of knowledge was also shared by the prosecutor and the trial court, resulted in Petitioner not being so fully informed. A defendant relies heavily on the advice of counsel at the critical plea bargaining stage of the case and has every right to expect that his counsel, the court, and the prosecution, as deputies of the court, will correctly inform him of the status of the law as it applies to him. During this critical stage of the case, having "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Id.,* at 380.

Counsel's ignorance of the law in this case is objectively deficient and substantially hindered Petitioner's ability to make an informed decision to accept or reject the plea offer. "Ignorance of the law" has never been a shield for a defendant and it certainly cannot be used as a sword against him when his own counsel, along with the prosecutor and the court, were ignorant of the law.

## 2. Prejudice

Under the second prong of the Strickland test, Petitioner must demonstrate

"for unawareness of the portion of his sentence that the sentencing court could require him to serve, since [the *Hunter* court concluded] that a valid guilty plea does not require awareness of [parole eligibility]" in order to make "a voluntary and intelligent choice among the alternative courses of action open" to him. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91

S.Ct. 160, 27 L.Ed.2d 162 (1970)). This Court agrees with holding in *Hunter,* that a defendant does not have to be informed of his minimum possible sentence for parole purposes. However, if informed, a defendant must be given correct advice, not only by his counsel, but by the prosecution team and the court. Petitioner Aeid's claim of ineffective assistance of counsel is meritorious due Counsel's ignorance of the law.

that there is a reasonable probability that counsel's deficient performance prejudiced him. Petitioner in this case must demonstrate a reasonable probability that but for Counsel's errors in considering or explaining a plea offer, he would have accepted the prosecution's offer. *See id,* at 381.

This issue presents a question of fact. The Court will not simply accept a petitioner's self-serving, post-conviction testimony regarding his intent with respect to a plea offer as sufficient, by itself, to establish a "reasonable probability" that he or she would have accepted the plea agreement. *See id.* at 381; *see also Johnson v. Duckworth,* 793 F.2d 898, 902 n. 3 (7th Cir.1986). As a result, additional "objective evidence" that Petitioner would have accepted the plea offer is required. *See Gordon,* 156 F.3d at 381; *see also Toro v. Fairman,* 940 F.2d 1065, 1068 (7th Cir. 1991); *Diaz v. United States,* 930 F.2d 832, 835 (11th Cir.1991) (finding awareness of plea offer and after-the-fact testimony concerning desire to plead is insufficient evidence). In *Gordon,* the Second Circuit found the great disparity between the actual maximum sentencing exposure under the Sentencing Guidelines and the sentence exposure represented by defendant's attorney to be sufficient objective evidence to establish a reasonable probability that the outcome of the proceedings would be different. *See Gordon,* 156 F.3d at 381; *see also Mask v. McGinnis,* 233 F.3d 132, 139 (2d Cir.2000); *see also Cullen v. United States,* 194 F.3d 401, 407–08 (2d Cir. 1999) (stating that disparity between actual sentence and sentence available through plea bargain is a factor in determining whether petitioner suffered prejudice).

Petitioner claims that had he known he would not be eligible for parole until he served twelve and one-half years, instead of eight and one-third years as advised by Counsel, then he would have accepted the plea offer. The record demonstrates that Petitioner considered the prosecution's plea offer of five to fifteen years when he thought he faced eight and one-third years. In fact, Petitioner asked the trial court if he could consider the plea offer over the weekend. The trial court denied Petitioner's request, and he declined the plea offer. More importantly, Counsel's error resulted in a fifty percent increased in Petitioner's sentence exposure. This disparity between the actual sentence exposure for parole purposes, and the sentence exposure erroneously represented by Counsel is sufficiently great to support the objective component establishing a reasonable probability that Petitioner would have accepted the plea offer. When combined with Petitioner's statement concerning his intentions, Petitioner has demonstrated prejudice in that he would have accepted the plea offer of five to fifteen years but for the erroneous advice of Counsel.

Respondent maintains that Petitioner's protestations of innocence indicate that it is unlikely that he would have agreed to any plea offer. The Second Circuit has stated that such contentions of innocence by a defendant are not entirely dispositive. *See Mask v. McGinnis,* 233 F.3d 132, 142 (2d Cir.2000); *see also Cullen v. United States,* 194 F.3d 401, 407 (2d Cir.1999) ("Though Cullen's insistence on his innocence is a factor relevant to any conclusion as to whether he has shown a reasonable probability that he would have pled guilty, it is not dispositive."). Taken in light of the other evidence of Petitioner's intentions, the Court finds that Petitioner's protestations of innocence do not forestall a conclusion that he would have been amenable to a reasonable plea offer.

## C. Habeas Remedy

The Supreme Court has announced that the remedy for an ineffective assistance of

counsel violation "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564, (1981); *see also United States v. Cox,* 245 F.3d 126, 133 (2d Cir.2001) (stating that a the remedy for constitutionally ineffective assistance of counsel should be fashioned specifically tailored to that error, in order to restore Petitioner as much as possible "to the circumstances that would have existed had there been no constitutional error"). Those "competing interests" include "the necessity for preserving society's interest in the administration of criminal justice." *Id.*

The district court has considerable discretion in fashioning a remedy appropriate under the circumstances. *See Gordon,* 156 F.3d at 381. There are two realistic remedies applicable in this case. First, the Court could give Petitioner a second opportunity to accept the plea offer. However, Petitioner is not necessarily entitled to specific performance of the previously rejected plea offer.[16] Furthermore, specific performance of the plea offer is frustrated because the offer of five to fifteen years is not allowed under N.Y. Penal Law § 70.02(3) and (4).[17] Second, the Court could vacate the judgment and order a new trial. *See Gordon,* 156 F.3d at 381–82. As to this remedy, the Court is hesitant to vacate a jury's guilty verdict where the trial itself was not affected by constitutional error.

The Court therefore reduces Petitioners sentence to sixteen and two-thirds years (200 months) with a minimum term of imprisonment of eight and one-third years (100 months) before parole eligibility. Under this remedy, Petitioner will be required to serve, at a minimum, eight and one-third years before eligible for parole— as informed by Counsel. When faced with the possibility of a sentence of eight and one-third to twenty-five years imprisonment, Petitioner rejected the prosecution's plea offer and opted for trial. This remedy restores Petitioner as much as possible "to the circumstances that would have existed had there been no constitutional error." *United States v. Cox,* 245 F.3d 126, 133 (2d Cir.2001).

## CONCLUSION

For the reasons stated above, it is hereby

ORDERED, that petitioner Aeid's application for a writ of habeas corpus is GRANTED only as it concerns petitioner Aeid's claim of ineffective assistance of counsel during the plea bargaining phase; and it is further

ORDERED, that petitioner Aeid's application for a writ of habeas corpus is DENIED in all other respects; and it is further

ORDERED, the judgment of the conviction is affirmed; and it is further

---

**16.** In *United States v. Day,* the Third Circuit applied the principles in *Morrison* to a petitioner who complained of ineffective assistance of counsel during plea negotiations based on his lawyer's incorrect estimate of the maximum sentencing exposure. 969 F.2d 39 (3d Cir.1992). The Third Circuit stated that "a second opportunity to accept a plea agreement ought not be automatic, but it does not follow that the relief of 'specific perfor-

mance' of a plea bargain is never appropriate." *Day,* 969 F.2d at 47.

**17.** If the trial court had fixed the term of imprisonment at fifteen years, Petitioner would be required to serve seven and one-half years before becoming eligible for parole as required by N.Y. Penal Law § 70.02(4) (McKinney 1998).

**198**

ORDERED, that the sentence is reduced to a term of imprisonment of sixteen and two-thirds years (200 months) with a minimum term of imprisonment of eight and one-third years (100 months) before parole eligibility; and it is further

ORDERED, that the Report–Recommendation is APPROVED and ADOPTED in all other respects; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.